**Michael WILSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0606–CR–319.

Court of Appeals of Indiana.

April 16, 2007.

Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Michael Wilson appeals his conviction and sentence for murder and carrying a handgun without a license. We affirm in part, vacate in part, and remand.

### Issues

Wilson raises three issues, which we reorder and restate as the following four:

I. Whether the trial court abused its discretion by denying his motion for mistrial;

II. Whether the trial court violated his due process rights by limiting his presentation of evidence at the sentencing hearing;

III. Whether the trial court erred by failing to ask him if he wished to make a statement at the sentencing hearing; and

IV. Whether Wilson's sentence is appropriate in light of the nature of the offense and his character.

### Facts and Procedural History

On June 3, 2005, the State charged Wilson with murder for the April 28, 2005, fatal shooting of Steven Eldridge. Wilson was also charged with carrying a handgun without a license, a class A misdemeanor. Wilson's trial began on April 10, 2006. During the trial, juror Wanda Black informed the trial court that she and other jury members were "concerned" because persons seated in the gallery "are staring at us and making us feel very uncomfortable." Tr. at 297. When the trial court questioned the jurors as a group on this

issue, none acknowledged having similar concerns. Wilson moved for a mistrial, arguing that at least some of the jurors were not being honest with the court, placing Wilson's opportunity for a fair trial "in great peril." *Id.* at 320. The trial court denied the motion. Then, upon Wilson's request, the court questioned each juror outside the presence of the rest of the jury. Each juror told the trial court that he or she remained able to be fair and impartial. Wilson renewed his motion for mistrial, which the trial court again denied. Wilson then moved to have Black replaced with an alternate juror, and the trial court granted his motion. On April 11, 2006, the jury found Wilson guilty as charged.

Prior to sentencing, a probation officer contacted Wilson in an effort to obtain information for the pre-sentence investigation ("PSI") report. Invoking his Fifth Amendment right against self-incrimination, Wilson refused to talk with the probation officer. The probation officer advised the trial court of Wilson's lack of cooperation, and the trial court entered an order limiting evidence at sentencing. The April 20, 2006, order stated in relevant part:

The court has been advised by the Probation Department, and has confirmed through defense counsel, that Defendant Michael Wilson has refused to provide any information to the pre-sentence investigation writer upon advice of counsel. The Court respects counsel and defendant's right to refuse to provide any information about the charged offense. However, much of the information sought by the PSI writer is personal information about the Defendant, to be included by statute, and intended to inform the Court's decision at sentencing. The inclusion of this information in the pre-sentence report allows the Court and parties to prepare in advance of the sentencing hearing. To the extent the Defendant is refusing to provide personal information for inclusion in

PSI that is provided for by IC 35–38–1–9, the Court hereby orders that the Defendant is precluded from introducing said information by way of testimony at the sentencing hearing.

Appellant's App. at 121. At the sentencing hearing on May 18, 2006, the trial court permitted Wilson only to make an offer to prove. Wilson offered the testimony of his mother and the mother of his child. The trial court sentenced Wilson to concurrent terms of sixty years for murder and one year for carrying a handgun without a license. Wilson now appeals his conviction and sentence.

### Discussion and Decision

### *I. Motion for Mistrial*

Wilson contends that the trial court erred in denying his motions for mistrial. Our standard of review is well settled.

The trial court is in the best position to assess the impact of a particular event upon the jury. Thus, the decision of whether to grant or deny a motion for mistrial is committed to the sound discretion of the trial court and will be reversed only upon an abuse of that discretion. The denial of a motion for mistrial will be reversed only upon a showing that the defendant was placed in a position of grave peril to which he should not have been subjected. The declaration of a mistrial is an extreme action and is warranted only when no other action can be expected to remedy the situation. The burden on appeal is upon the defendant to show that he was placed in grave peril by the denial of the mistrial motion. The defendant on appeal also has the burden to show that no other action could have remedied the perilous situation into which he was placed.

*Anderson v. State,* 774 N.E.2d 906, 911 (Ind.Ct.App.2002) (citations omitted).

In *Anderson,* a juror informed the court during deliberations that she had recognized a courtroom spectator who she believed was sitting with the defendant's supporters, and that she believed that the spectator had also recognized her. Her fellow jurors persuaded her to bring it to the trial court's attention. She also assured the court that she was "very confident" that the incident would not affect her ability to be fair and impartial. *Id.* She later stated to the court that although "it probably wouldn't happen ... it could happen, that I am intimidated by the— some of the spectators[.]" *Id.* at 911–12. At the juror's request, the trial court proposed the remedy of replacing her with an alternate juror, but the defendant objected and moved for mistrial. The trial court denied the motion, retained the juror, and individually questioned each juror as to whether the incident would interfere with his or her ability to be fair and impartial. Each juror confirmed that he or she could return a fair and impartial verdict, and the trial court asked the jury to continue deliberating. In affirming the trial court's denial of Anderson's motion for mistrial, this Court noted that Anderson failed to demonstrate that the trial court's proposed lesser remedy of removing the juror was inadequate. There was nothing in the record to suggest that the other jurors' impartiality was adversely affected by the incident.

Similarly, in the instant case, the trial court first questioned Black—the admittedly "concerned" juror—and then questioned each jury member individually about his or her ability to remain fair and impartial. Wilson's counsel argued that "what we have is jurors being, for whatever reasons, reasons beyond my understanding, not being candid with the Court, which gives us reason to be concerned about their ability to live up to their oaths

in other ways in this case and give Mr. Wilson a fair trial." Tr. at 360. The trial court denied Wilson's motion for mistrial, stating, "While I realize there are some inconsistencies between the testimony of Ms. Black and the other jurors, as the record will reflect, this has been the most unintimidating method of questioning that I could possibly devise, and I have no reason to, to not take these people at their word and to take her word over theirs." *Id.* at 361. In response to Wilson's concerns that Black was "not being truthful" about the concerns of the other jurors, the trial court excused Black and replaced her with an alternate juror. *Id.* at 362.

Wilson has failed to demonstrate that he was placed in a position of grave peril by the trial court's denial of his motion for mistrial. Upon learning of Black's concerns, the trial court interviewed each juror to confirm that he or she still had the ability to remain fair and impartial. When Wilson speculated that Black might be lying about the concerns of her fellow jurors, the trial court removed Black. In sum, the trial court removed the only juror who expressed doubt about her ability to remain fair and impartial, thereby remedying the situation and making the extreme action of declaring a mistrial unnecessary. We cannot speculate, as Wilson asks us to, that one or more of the jurors lied to the trial court. The trial court's denial of Wilson's motion for mistrial was not an abuse of discretion; we therefore affirm Wilson's convictions.

## II. Order Limiting Evidence at Sentencing

 Wilson also contends that the trial court erred by denying him the opportunity to present personal information—e.g., family history, employment history, mental health history—at his sentencing hearing because of his refusal to cooperate with the probation officer assigned to prepare

his PSI report. The trial court stated that it was "not going to allow [Wilson] to have it both ways[.]" Tr. at 463. At the hearing, Wilson's counsel argued, "[F]or us to not be allowed to present information to the Court through other witnesses deprives [Wilson] of his constitutional rights to due process under both the Indiana and United States Constitution." *Id.* at 465. The trial court held that he had waived those rights by failing to provide personal information for the PSI report but cited no legal support for that ruling.[1]

 The Fifth and Fourteenth Amendments of the U.S. Constitution provide in part that no person shall be "deprived of life, liberty, or property, without due process of law[.]"[2] Wilson also claims violations of Article 1, Sections 12 and 13, of the Indiana Constitution, but he fails to present a separate analysis specific to these state constitutional provisions. Therefore, he waives review of his state constitutional claims. *See Richardson v. State,* 800 N.E.2d 639, 647 (Ind.Ct.App. 2003) (holding that appellant's failure to cite authority or to make separate argument specific to state constitutional provi-

sion waives state constitutional argument on appeal). Wilson also refers us to Indiana Code Section 35–38–1–3, which states in relevant part: "The [convicted] person is entitled to subpoena and call witnesses and to present information in his own behalf."

We must conclude that the trial court did in fact violate the statute and Wilson's federal due process rights by refusing to admit evidence presented on Wilson's behalf through the testimony of others at the sentencing hearing. Whether this amounts to reversible error, however, is another question. *See, e.g., Bussberg v. State,* 827 N.E.2d 37, 44 (Ind.Ct.App.2005) (holding that error violating due process rights of defendant was harmless and affirming revocation of probation), *trans. denied; see also Bush v. State,* 775 N.E.2d 309, 311 (Ind.2002) (trial court error, "even of constitutional dimension," does not necessarily require reversal of conviction if error is harmless). A federal constitutional error is reviewed de novo and must be "harmless beyond a reasonable doubt." *Davies v. State,* 730 N.E.2d 726, 735 (Ind. Ct.App.2000) (citing *Chapman v. Califor-*

---

1. As noted by Wilson, the Indiana statutes governing the sentencing process do not require that any information required for the PSI report be gathered from the convicted person. *See* Ind.Code Ch. 35–38–1. Information regarding most or all of these topics can be (and sometimes is) obtained from family members and/or friends of the convicted person. Further, nothing in the sentencing statutes suggests that the convicted person who fails to assist in the preparation of the PSI report loses his statutory right to present personal information at the sentencing hearing as a result.

2. Wilson also claims that the trial court violated his Sixth Amendment right to present evidence and witnesses on his behalf. As our supreme court has noted, however, a sentencing hearing is not a "criminal prosecution" within the meaning of the Sixth Amendment because its sole purpose is to determine only

the appropriate punishment for the offense, not the accused's guilt. *Debro v. State,* 821 N.E.2d 367, 373–74 (Ind.2005) (citing *U.S. v. Francis,* 39 F.3d 803, 810 (7th Cir.1994) (citations omitted)) (rejecting the defendant's claim that the use of hearsay testimony during his sentencing hearing violated the Confrontation Clause of the Sixth Amendment). Interestingly, our supreme court has also held that a sentencing proceeding *is* a "criminal prosecution" for purposes of the convicted person's "right ... to be heard by himself and counsel" pursuant to Article 1, Section 13 of the Indiana Constitution. *See Vicory v. State,* 802 N.E.2d 426, 429 (Ind.2004) (extending convicted person's right of allocution at sentencing to include probation revocation hearing). Today, we need not determine whether the Indiana constitution additionally affords a convicted person the right to present evidence and witnesses at a sentencing hearing.

*nia,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)), *trans. denied, cert. denied* (2001).

■ The State argues that if the trial court violated Wilson's due process rights, the violation was harmless error. It contends that even though the testimony of Wilson's mother and former girlfriend was presented only as an offer of proof, the trial court actually considered some of the information revealed in that testimony in its sentencing decision. Specifically, the trial court stated, "With respect to the hardship issue, the Court rejects that mitigator for this reason. Even if he were to receive the minimum sentence of forty-five years, with good time the children would be in their twenties when he got out. So I don't think there's any weight to be afforded to that mitigator." Tr. at 22–23. The PSI report indicates that Wilson has no children; therefore, we presume that the trial court's source for this information was the testimony of Wilson's mother and former girlfriend.[3] Because the court considered and rejected the hardship on Wilson's children as a mitigating factor, the State argues that Wilson's rights were merely "rhetorically denied," with no effect on his sentence. Appellee's Br. at 12. We disagree.

While the trial court indeed considered hardship as a potential mitigating factor, it appears that it did not weigh other information revealed in the testimony of Wilson's mother and former girlfriend. For example, Wilson's mother testified that he has struggled with depression "for a number of years" and that he has "worked very hard on being independent." Tr. at 467–68. She also testified that he was in special education classes throughout most of his education and that he was enrolled in a program to obtain his high school

diploma. *Id.* at 468–69. We cannot conclude that the trial court's error in excluding this evidence was harmless beyond a reasonable doubt. Therefore, we vacate Wilson's sentence and remand for the trial court to hold another sentencing hearing, during which Wilson may present witnesses on his behalf.

### III. Failure To Ask If Defendant Wished To Make A Statement

■ The next issue is whether the trial court erred by failing to ask Wilson if he wished to make a statement on his own behalf at the sentencing hearing. Indiana Code Section 35–38–1–5(a) provides: "The defendant may also make a statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a statement." A convicted person's right to make a statement prior to being sentenced, also known as the right to allocution, arises from Article 1, Section 13, of the Indiana Constitution, which states in relevant part: "In all criminal prosecutions, the accused shall have the right ... to be heard by himself and counsel." *Vicory v. State,* 802 N.E.2d 426, 429 (Ind.2004).

While the trial court clearly erred by failing to ask Wilson if he wished to make a statement, there is the question of whether Wilson waived the issue for review by failing to object in a timely manner. Our review of this question is moot, however. As noted above, we are remanding for a proper sentencing hearing, at which time the trial court shall ask Wilson if he wishes to make a statement, and allow him to do so if he answers in the affirmative.

---

**3.** Wilson's mother testified that Wilson had two children and an "expecting girlfriend[.]" Tr. at 468–69. Patrice Cushenberry testified that Wilson was the father of her ten-month-old daughter.

## IV. Appropriateness of Sentence

Finally, Wilson argues that his sixty-year sentence for murder is inappropriate in light of his character and the nature of the offense. Indeed, under Indiana Appellate Rule 7(B), we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in the light of the nature of the offense and the character of the offender." The sentencing statute for murder provides a range from forty-five to sixty-five years, with an advisory sentence of fifty-five years. *See* Ind.Code § 35–50–2–3. Because we are remanding this case to the trial court for re-sentencing, we need not review the appropriateness of the sixty-year sentence.

In sum, we find that the trial court did not abuse its discretion by denying Wilson's motion for mistrial, and we therefore affirm his convictions for murder and carrying a handgun without a license. We conclude that the trial court violated Wilson's due process rights by denying him the right to present evidence at the sentencing hearing. As we cannot conclude that this error was harmless beyond a reasonable doubt, we hereby vacate Wilson's sentence and remand this case to the trial court for resentencing proceedings consistent with this opinion.

Affirmed in part, vacated in part, and remanded.

SULLIVAN, J., and SHARPNACK, J., concur.