## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2018, 7:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James E. Saylor, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | August 31, 2018 <br><br> Court of Appeals Case No. 39A05-1712-CR-2921 <br><br> Appeal from the Jefferson Circuit Court <br><br> The Honorable Jeffery Sharp, Special Judge <br><br> Trial Court Cause No. 39C01-0607-FA-75 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, James E. Saylor (Saylor), appeals the trial court's adjudication as a habitual offender upon remand and following a jury trial.

We affirm.

# ISSUES

Saylor present two issues on appeal, which we restate as follows:

(1) Whether the trial court erred by denying his motion to dismiss the habitual charges when the charges were procedurally and substantially defective; and

(2) Whether the trial court abused its discretion when it denied Saylor's motion for a mistrial following voir dire.

# FACTS AND PROCEDURAL HISTORY

On October 4, 2007, Saylor was convicted of two Counts of child molesting, intimidation, and vicarious sexual gratification. He subsequently pled guilty to being a habitual offender, and was sentenced to 138 years. On direct appeal, Saylor argued that the trial court improperly allowed the State to amend the charging information, that the trial court erroneously admitted evidence, and that his sentence was inappropriate. We affirmed his conviction and sentence on September 17, 2008.

[5] After the post-conviction court denied Saylor's 2014 petition for post-conviction relief, he appealed. On appeal, he argued that his trial counsel was ineffective and that his guilty plea to the habitual offender charge was invalid because he did not personally waive his right to a jury trial. On May 23, 2016, this court affirmed in part, and remanded for a new trial on the habitual offender charge.

[6] On September 26, 2017, the State tried Saylor during a jury trial on the habitual offender charge. At the close of the evidence, the jury found him to be a habitual offender. On November 3, 2017, the trial court held a sentencing hearing and sentenced Saylor to thirty years, consecutive to his 2007 sentence, for an aggregate sentence of 138 years.

[7] Saylor now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Motion to Dismiss*

[8] Saylor contends that the trial court erred in denying his motion to dismiss and now requests this court to dismiss the charges because his initial arrest and subsequent criminal charges lacked sufficient probable cause. To support his claim, he presents us with three allegations: (1) "the record contains evidence of document tampering on the face of the probable cause affidavit(s);" (2) "the affidavit of probable cause, even if supplemented by police reports, was statutorily insufficient to allow for a judicial determination of probable cause;" and (3) he did not receive a probable cause hearing and therefore "the trial court

was without substantive basis to find probable cause to sustain the charges." (Appellant's Br. pp. 14, 15).

[9] Saylor previously pursued a direct appeal and a post-conviction appeal. Thus, "[s]ubsequent collateral charges must be based on grounds enumerated in Post-Conviction Rule 1." *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004). "If an issue was known and available on direct appeal, but not raised, it is procedurally defaulted as a basis for relief in subsequent proceedings." *Id*. Here, Saylor's claim of a procedurally defective probable cause underlying his charges was known and available on direct appeal and should have been raised at that point in time. His free-standing claim of error is now no longer available for our review.

[10] Moreover, we have repeatedly held that "lack of probable cause is not grounds for dismissing a charging information." *Flowers v. State*, 738 N.E. 2d 1051, 1055 (Ind. 2000) (quoting *Hicks v. State*, 544 N.2d 500, 505 (Ind. 1989)). As observed by our supreme court:

> The probable cause affidavit is not the means by which the accused is charged with a crime, but is a means of satisfying the constitutional and statutory requirements that the pre-trial detention of the accused to face the charge be based upon a determination, by a neutral and detached magistrate, that probable cause exists to believe that the accused committed the crime.

*Gilliam v. State*, 383 N.E.2d 297, 303 (Ind. 1978). Therefore, even if Saylor is correct in his contention that the probable cause affidavit was deficient then his

only remedy would have been (if argued before the trial court or on direct appeal) a release from pre-trial detention predicated upon an illegal arrest. *Flowers*, 738 N.E.2d at 1055.

## II. *Motion for Mistrial*

Next, Saylor contends that the trial court abused its discretion by denying his motion for mistrial at the conclusion of voir dire due to possibly tainted prospective jurors.

The trial court is in the best position to assess the impact of a particular event upon the jury. *Wilson v. State*, 865 N.E.2d 1024, 1027 (Ind. Ct. App. 2007). Thus, the decision of whether to grant or deny a motion for mistrial is committed to the sound discretion of the trial court and will be reversed only upon an abuse of that discretion. *Id.*

During voir dire, the trial court explained to the venire:

> The State has alleged that [Saylor] is a habitual offender. He was convicted at trial of two [C]ounts of Child Molesting, a [C]lass A felony; Vicarious Sexual Gratification, a [C]lass B felony; and Intimidation, a [C]lass D felony. We will not get into the facts of those convictions. Those issues were decided in a separate trial. We are here today for the sole and limited purpose for you to decide if [Saylor] is a habitual offender.

(Transcript, Vol. II, p. 5). Some prospective jurors on the third panel were confused about the purpose of the new trial. One juror opined, "All they'd have to do is just go back and see like who – what adjudicated the case or – and

see how many convictions he has and wham, bam, he's convicted and uh – why even have another trial and – it seems kind of a waste." (Tr. Vol. II, p. 20). A second juror reflected:

> Well, he – it's been stated he's already had some felonies so uh – I mean if he's already had so many then uh – why go to the trouble of – of like – why not is it not set in stone? Why does it have to have a judge to uh – you know, like to give him time for it?

(Tr. Vol. II, pp. 31-32). And a third prospective juror questioned, "I thought uh – the Judge said that he already had felonies for DUI's and . . . and I thought that's what he said at the beginning." (Tr. Vol. II, p. 32).

[14]  In response, Saylor's counsel explained

> [T]he Judge, what he said, what he was telling you at the beginning of the case, and this is really, really important is he was telling you what the State is alleging, the State is accusing [Saylor] of. The Judge has not made a predetermination, and this is – this [is], frankly, really, really important. The Judge has not made a pre-determination about whether or not [Saylor] has prior felony convictions. What he said at the beginning, and – and – it's confusing, right, because you guys show up. You have no idea what this case is about or what the situation is about, but what he was telling you was [Saylor] is here. He has been charged with being a habitual. The State is alleging that he was convicted in this case and that he has at least two prior felony convictions. That's what the Judge said at the beginning. Does that help you understand what he was saying?

(Tr. Vol. II, p. 33). Saylor's counsel convinced every panel member, except one, who stated, "Well, couldn't the State just whip out the paperwork and show - . . . [i]t looks pretty cut and dry, but I'd have to I guess I'd have to see the – whatever it is they have, but it don't look good[.]" (Tr. Vol. II, pp. 36, 37). After a short colloquy between Saylor's counsel and the juror, the trial judge removed the remaining prospective jurors from the courtroom. Although the trial court initially attempted to clarify the proceedings to the juror, the trial court excused her for cause. When the panel of prospective jurors returned, Saylor's counsel asked if there were more questions—there were none.

[15] Once the jury was selected, Saylor moved for a mistrial, arguing

> Your honor, we believe that the [c]ourt has inadvertently invaded the province of the jury, but nonetheless has created a situation where the jury has received at least an improper view of the facts and the law and had prejudged or believes the [c]ourt has prejudged the case, and as a result we are requesting a mistrial.

(Tr. Vol. II, p. 43-44). On appeal, Saylor claims that "the prospective jurors' comments were gross misconduct and probably harmed Saylor's ability to obtain a fair trial and fundamentally compromised the appearance of juror neutrality." (Appellant's Br. p. 17).

[16] In *Ramirez v. State*, 7 N.E.3d 933, 939 (Ind. 2017), our supreme court explained the applicable burden of proof for a successful motion for mistrial in cases of suspected jury taint as follows:

Defendants seeking a mistrial for suspected jury taint are entitled to the presumption of prejudice only after making two showings, by a preponderance of the evidence: (1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury. The burden then shifts to the State to rebut this presumption of prejudice by showing that any contact or communications were harmless. If the State does not rebut the presumption, the trial court must grant a new trial. On the other hand, if a defendant fails to make the initial two-part showing, the presumption does not apply. Instead, the trial court must apply the probable harm standard for juror misconduct, granting a new trial only if the misconduct is 'gross and probably harmed' the defendant.

Because Saylor cannot establish that extra-judicial contact or unauthorized communications occurred, the presumption of prejudice does not apply and we apply the probable harm standard.

[17] Considering the case at hand in light of the probable harm standard, we conclude that the trial court properly dismissed Saylor's motion for mistrial. Each juror voiced his or her confusion and concern about the proceedings and sought clarification from either the parties or the trial court. They asked legitimate questions to clear their misunderstanding and Saylor's counsel elaborated on and properly explained the legal mechanism of a habitual offender charge. We cannot find that the jury was tainted.

## CONCLUSION

[18] Based on the foregoing, we hold that the trial court properly denied Saylor's motion to dismiss and his motion for a mistrial.

Affirmed.

Vaidik, C. J. and Kirsch, J. concur