**Joseph A. SIMMONS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 40A05–1101–CR–10.

Court of Appeals of Indiana.

Oct. 31, 2011.

P. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Joseph A. Simmons ("Simmons") was convicted in Jennings Circuit Court of Class C felony operating a vehicle while intoxicated ("OWI") and sentenced to eight years executed. Simmons appeals and presents three issues, which we restate as:

I. Whether Simmons's conviction for OWI, which was enhanced to a Class C felony because of a prior OWI conviction, constitutes an ex post facto violation because his prior conviction occurred before the enactment of the enhancement statute;

II. Whether the State presented sufficient evidence to support Simmons's OWI conviction; and

III. Whether the sentence imposed by the trial court was inappropriate.

We affirm.

### Facts and Procedural History

On the evening of August 11, 2010, Mike Garlitch was driving his truck in North Vernon, Indiana, and turned into an alley. In the alley, Garlitch approached a beige or light tan Ford Ranger truck. When Garlitch attempted to pass in front of the truck, a passenger in the truck threw a beer bottle at Garlitch's truck and called Garlitch, who is white, a "f* *king n* * *er." Tr. p. 148. The truck then swerved and pulled out in front of Garlitch. Garlitch then telephoned the police because he believed the men in the truck were drunk. Garlitch also followed the truck for a while, but eventually lost sight of it.

Shortly thereafter, Garlitch came across a police officer who had stopped a gray-blue Ford Ranger, thinking it might be the truck Garlitch had encountered. Garlitch informed the officer that the stopped truck was not the truck Garlitch had encountered. The police continued to search for the tan Ford Ranger. North Vernon Police Officer Keith Messer soon saw a tan Ford Ranger and followed the vehicle. When the Ranger came to an intersection with a four-way stop sign, it did not come to a complete stop. Instead, "[i]t slowed down enough to make a right-hand turn[.]" Tr. p. 167. Still, Officer Messer did not pull the vehicle over yet, and continued to follow it. As they approached a "rather sharp turn to the left," the truck "drifted into the other lane almost entirely over into the lane." Id. Officer Messer then activated his emergency lights and initiated a traffic stop.

Simmons was the driver of the tan Ford Ranger. Both Simmons and his passenger claimed to know nothing about the incident with Garlitch. The smell of alcohol emanated from the interior of the truck. Simmons had a "blank, sleepy" look on his face, his eyes were red and glassy, and his speech was somewhat slurred. Tr. p. 268. When he exited his truck, Simmons held onto the door to balance himself, and when he walked toward Officer Messer, he had to hold onto the railing on the bed of his truck to maintain his balance. Simmons also declined Officer Messer's request to undergo standard field sobriety tests. Officer Messer then handcuffed Simmons and read him the Indiana implied consent law. Simmons agreed to undergo a chemical test, and Officer Messer transported him to the police station.

At the station, Simmons signed a copy of the implied consent warning and a waiver of his Miranda rights. He also agreed to undergo the field sobriety tests he had

earlier refused. Simmons failed to complete the horizontal gaze nystagmus test, as he was unable or refused to hold his head still. During the walk-and-turn test, Simmons was unable keep his right foot directly in front of his left foot and told Officer Messer, "I can't do that sober." Tr. p. 192. When Officer Messer told Simmons it was his choice to proceed with the test, Simmons chose not to complete the test. When instructed regarding the one-leg stand test, Simmons told Officer Messer, "let's just go into the other room," indicating where the chemical breath test machine was located. Tr. p. 194.

Before Officer Messer administered the breath test, he interviewed Simmons. When asked what the date was, Simmons stated "August 12, 14, or 15," even though it was, in fact, August 11. Tr. p. 195. He also told Officer Messer that he had been travelling east when stopped, even though the street he was on is a north-south street. Simmons also stated that the time was 3:30 a.m., even though it was actually 8:30 p.m. Simmons further gave a vulgar, sarcastic response when asked if he had eaten anything that day. And when Officer Messer asked if Simmons was "under the influence" at the time, Simmons replied, "I hope so." Tr. p. 200.

When Simmons first blew into the breath machine, he blew only for a short period of time, and the machine printed a ticket that stated the sample provided was invalid. When Simmons blew into the machine the second time, the machine indicated that his blood alcohol content ("BAC") was .19.

Subsequent investigation indicated that Simmons's driver's license had been suspended and also that Simmons had been convicted in 1998 of Class C felony OWI with a BAC of .10 or greater, causing death. As a result, the State charged Simmons on August 19, 2010, as follows:

Count I, Class C felony OWI with a prior conviction for OWI causing death; Count II, Class A misdemeanor OWI, endangering a person; Count III, Class A misdemeanor OWI with a BAC of .15 or greater; and Count IV, Class C misdemeanor OWI. The State also charged Simmons with the infractions of disregarding a stop sign and driving while suspended.

A jury trial commenced on November 30, 2010, with Count I reserved for a second phase of the trial. The jury found Simmons guilty on all counts except the charge of driving while suspended. The trial then moved to the second phase on Count I, which was held as a bench trial. The trial court found Simmons guilty of Count I on December 2, 2010. At a sentencing hearing held on December 23, 2010, the trial court merged all the OWI convictions with Count I and sentenced Simmons to eight years executed. Simmons now appeals.

## I. OWI Enhancement Statute

Simmons first argues that the enhancement of his OWI conviction to a Class C felony, which is based on his prior conviction for OWI causing death, constitutes an ex post facto violation because the enhancement statute was enacted after his prior conviction for OWI causing death. The constitutionality of a statute is a question of law which we review de novo. *Teer v. State*, 738 N.E.2d 283, 287 (Ind.Ct.App. 2000), *trans. denied.*

Both the federal Constitution and our state Constitution contain prohibitions against ex post facto laws. Article 1, Section 10 of the United States Constitution states that "[n]o State shall . . . pass any . . . ex post facto Law," and Article 1, Section 24 of the Indiana Constitution similarly provides that "[n]o ex post facto law . . . shall ever be passed." Thus, our analysis under both provisions is the same.

*Teer,* 738 N.E.2d at 287. Both of these provisions prohibit legislatures from enacting any law that imposes a punishment for an act which was not punishable at the time the act was committed, or which imposes additional punishment to that prescribed at the time the act was committed. *Id.* (citing *Spencer v. O'Connor,* 707 N.E.2d 1039, 1042 (Ind.Ct.App.1999); *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). Our inquiry focuses on whether a legislative change alters the definition of criminal conduct or increases a penalty by which a crime is punishable, not on whether a legislative change produces some sort of "disadvantage." *Id.* (citing *Cal. Dep't of Corrections v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)).

■ Here, Simmons was convicted in 1998 of Class C felony OWI causing death. Effective July 1, 2008, our General Assembly amended Indiana Code section 9–30–5–3 to provide that OWI is elevated to a Class C felony if the person has a previous conviction of OWI causing death or serious bodily injury. I.C. § 9–30–5–3(b) (2008). Simmons argues that elevating his conviction to a Class C felony based on a statute that was enacted after he committed his prior OWI is an ex post facto violation. Both this court and our supreme court have rejected similar arguments.

In *Funk v. State,* 427 N.E.2d 1081 (Ind.1981), the defendant claimed that the general habitual offender statute was an unconstitutional ex post facto law. Our supreme court gave short shrift to this argument, noting that the penalties provided for in the habitual offender statute were imposed only for future crimes. *Id.* at 1087. "That prior crimes are involved in an habitual offender prosecution does not change the fact [that] the penalty is imposed only for the last crime committed." *Id.* Thus, the court concluded that

Funk was not being punished for having committed the prior crimes that occurred before the habitual offender enhancement statute went into effect; he was instead being punished for the crime committed *after* the effective date of the statute. *Id.; see also Hall v. State,* 273 Ind. 507, 517, 405 N.E.2d 530, 537 (1980) (rejecting defendant's claim that habitual offender statute was unconstitutional ex post facto law because the statute went into effect at least ten months before the defendant committed the crime for which he was convicted) (citing *McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1900) (noting that since recidivist statutes impose punishment on only future crimes, they have no ex post facto implications)).

And in *Teer, supra,* the defendant was convicted for possession of firearm by a serious violent felon ("SVF"). On appeal, he claimed that the SVF statute was an improper ex post facto law because it criminalized otherwise legal behavior—the possession of a firearm—based only on the fact that he had committed certain felonies before the effective date of the SVF statute. We rejected this argument, noting that the SVF statute neither re-punished Teer for his prior crime nor enhanced the penalty for the prior crime. *Teer,* 738 N.E.2d at 288.

The same analysis holds true here. Simmons is not being re-punished for his prior crime, nor has the penalty for his prior crime been enhanced. He is simply being punished as a recidivist based upon his most recent act of OWI. And he is being punished under the version of the statute which was effective at the time he committed his most recent OWI. *See Collins v. State,* 911 N.E.2d 700, 708 (Ind.Ct. App.2009) (noting general rule that the law in effect at the time the crime was committed is controlling), *trans. denied.*

*Wallace v. State,* 905 N.E.2d 371 (Ind. 2009) is distinguishable from the facts before us. In *Wallace,* the defendant had been tried, convicted, and served his sentence prior to the effective date of the Sex Offender Registry Act. When he refused to register as a sex offender, Wallace was charged and convicted of Class D failing to register as a sex offender. On appeal, our supreme court concluded that application of the sex offender registry requirement to Wallace was an ex post facto violation because it imposed additional burdens that acted as an additional punishment that went beyond that which could have been imposed at the time Wallace's crime had been committed. *Id.* at 384.

Here, however, Simmons is not being punished for his prior crime. He is being punished for the instant crime. Wallace had the additional punishment of registration imposed on him based solely on his *prior* conviction. Here, Simmons's *current* crime has simply been enhanced based upon his recidivism. We therefore conclude that the present case is controlled by *Funk* and that Simmons's conviction for Class C felony OWI does not constitute an ex post facto violation.

## II. Sufficiency of the Evidence

Simmons also claims that the State presented insufficient evidence to support his conviction.

> In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed.

*Green v. State,* 945 N.E.2d 205, 207 (Ind. Ct.App.2011).

Simmons does not appear to claim that there was insufficient evidence of his intoxication; he instead argues that the State failed to prove that he operated his vehicle in a manner that endangered a person and that the State failed to prove that his BAC was .15 or greater. We need not address these issues, however, because the State was not required to prove these particular facts in order to support Simmons's conviction.

Although the State charged Simmons with OWI endangering a person and OWI with a BAC of .15 or greater, these charges were merged into Simmons's conviction for Class C felony OWI. To convict Simmons of Class C felony OWI, the State was required to prove only that Simmons operated a motor vehicle while intoxicated and that he had a prior conviction for OWI causing death.

Indiana Code section 9–30–5–1(a) (2004) ("Section 1") provides that a person who operates a motor vehicle with a BAC of at least .08 but less than .15 commits a Class C misdemeanor. However, this offense is a Class A misdemeanor if the person's BAC is .15 or greater. I.C. § 9–30–5–1(b).

Indiana Code section 9–30–5–2(a) (2004) ("Section 2") provides that a person who operates a motor vehicle while intoxicated commits a class C misdemeanor. However, this offense becomes a Class A misdemeanor if the person "operates a vehicle in a manner that endangers a person." I.C. § 9–30–5–2(b); *see also Staley v. State,* 895 N.E.2d 1245, 1250 (Ind.Ct.App.2008) (discussing Section 2).

Thus, there are two statutes that criminalize drunken driving: Section 1 punishes operating a motor vehicle with a certain BAC and elevates the offense if the person's BAC exceeds a certain threshold;

and Section 2 punishes operating a motor vehicle while simply "intoxicated"—without reference to the person's BAC—and elevates the offense if the manner in which the person operates the vehicle endangers a person.

Indiana Code section 9–30–5–3 (2004) ("Section 3") provides that OWI under either Section 1 or Section 2 is further elevated if the person has a prior conviction for OWI. The portion of Section 3 that is relevant to our case provides that OWI under either Section 1 or Section 2 is a Class C felony if the person has a prior conviction for OWI causing death or OWI causing serious bodily injury. I.C. § 9–30–5–3(b). Therefore, to be convicted of Class C felony OWI, the State must prove that the defendant had a prior conviction for OWI causing death—which is undisputed here—and that the defendant operated a motor vehicle while intoxicated as defined under either Section 1 or Section 2. That is, the State is *not* required to show that the defendant endangered a person or that his BAC was .15 or greater.

As discussed in the facts above, there was overwhelming evidence that Simmons was intoxicated. He swerved his truck into the other lane of traffic; his truck smelled of alcohol; he had a sleepy expression on his face; his speech was slurred; his eyes were red and glassy; he had trouble maintaining his balance; he was unable to complete the field sobriety tests; and he indicated himself that he was intoxicated by exclaiming that he "c[ould]n't do that sober" and that he "hoped" he was intoxicated. Tr. pp. 192, 200. He also did not know the correct date or even the time of day. We therefore conclude that the State presented sufficient evidence to support the jury's finding that Simmons operated his truck while intoxicated. The

State also proved, and Simmons does not deny, that Simmons had a prior conviction for OWI causing death. Therefore, the State presented sufficient evidence to support Simmons's conviction for Class C felony OWI.

### III. Sentencing

█ Lastly, Simmons claims that his maximum eight-year sentence imposed by the trial court was inappropriate.[1] Pursuant to Indiana Appellate Rule 7(B) (2009), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind.2008).

█ Simmons also notes that "[t]he maximum possible sentences are generally most appropriate for the worst offenders." *Wells v. State,* 904 N.E.2d 265, 274 (Ind. Ct.App.2009), *trans. denied* (citing *Buchanan v. State,* 767 N.E.2d 967, 973 (Ind. 2002)). But this is "not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender." *Id.* By stating that maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. *Id.* But this encompasses a considerable variety of

---

1. Indiana Code section 35–50–2–6 provides that "[a] person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years."

offenses and offenders. *Id.* We therefore concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about his character. *Id.*

 Considering the nature of Simmons's offense, we note that Simmons not only operated a vehicle while he was intoxicated, he appeared to be rather nonchalant in his demeanor. He jokingly told the police that he couldn't complete one of the field sobriety tests even if he was sober and when asked if he was intoxicated, he said, "I hope so." Tr. p. 200. Although this might seem to be light-hearted banter, it indicates that Simmons did not take his offense very seriously. And this is especially troubling given Simmons's prior criminal history, which, as noted, includes a conviction for OWI causing death.

The remainder of Simmons's criminal history also does not speak well for his character. In addition to his 1997 conviction for OWI causing death,[2] Simmons has an extensive history of criminal behavior and disobeying traffic laws. Simmons committed relatively minor infractions such as speeding and driving while suspended, but he was also convicted of Class A misdemeanor driving while suspended, Class C felony dealing in a controlled substance, and Class D felony possession of a hypodermic needle. Simmons's probation for the dealing conviction was revoked for failing a drug screen. And on the date the pre-sentence investigation report was completed, Simmons had pending charges for yet another Class C felony OWI.

When Simmons killed another person as a result of his drunken driving, it should have been a life-altering experience for him. However, Simmons seems to have not altered his behavior at all. Simmons is a recidivist, lethal drunk driver whose behavior has obviously been undeterred by his prior contact with the criminal justice system. His prior convictions, as they relate to the current offense, reflect very poorly on his character. *See Wooley v. State,* 716 N.E.2d 919, 929 n. 4 (Ind.1999) (noting that a prior conviction for OWI would be a significant aggravator in a subsequent alcohol-related offense). After due consideration of the trial court's sentencing decision, we cannot say that Simmons's eight-year sentence is inappropriate.

### Conclusion

Simmons's conviction for Class C felony OWI does not constitute an ex post facto violation, the State presented sufficient evidence to support Simmons's conviction for Class C felony OWI, and Simmons's eight-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

BAILEY, J., and CRONE, J., concur.

**2.** Simmons notes in his brief, without citation to any authority, that his 1997 conviction for OWI causing death was used both to enhance his OWI conviction to a Class C felony and as an aggravating factor. This is no longer improper. In *Pedraza v. State,* 887 N.E.2d 77, 80 (Ind.2008), our supreme court explained that because trial courts no longer "enhance" sentences under the advisory sentencing scheme, using a material element of a crime as an aggravating factor is "no longer an inappropriate double enhancement." Nor did the trial court here impose the maximum sentence based only on this one aggravating factor. *See id.* (noting that "a trial court that imposed a maximum sentence, explaining only that an element was the reason, would have provided an unconvincing reason that might warrant revision of sentence on appeal.").