Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**MATTHEW J. McGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana



FILED

Dec 05 2012, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

HERMAN GEHL, II,               )
                              )
    Appellant-Defendant,       )
                              )
       vs.                 )    No. 13A01-1203-CR-92
                              )
STATE OF INDIANA,             )
                              )
    Appellee-Plaintiff.        )

APPEAL FROM THE CRAWFORD SUPERIOR COURT
The Honorable Kenneth Lynn Lopp, Judge
Cause No. 13C01-1108-FD-60

**December 5, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Herman Gehl, II ("Gehl") pleaded guilty in Crawford Circuit Court to two counts of Class D felony invasion of privacy and was sentenced to consecutive terms of two years incarceration on each count. Gehl appeals and claims (1) that the trial court abused its discretion in sentencing him and (2) that the sentence imposed is inappropriate.

We affirm.

## Facts and Procedural History

Gehl had a son with a woman named Stevie Joe Bledsoe ("Stevie Joe"). Gehl had visitation rights with his son H.G., but Stevie Joe had a history of non-compliance with respect to Gehl's visitation rights. Stevie Joe's husband, Billy Bledsoe ("Billy"), and Gehl also had a history of conflict. After one run-in with Billy, Gehl was convicted of battery and was ordered to have no contact with Billy as a condition of his probation. Stevie Joe also had a protective order against Gehl, and this order prevented Gehl from visiting Stevie Joe's home.

On November 24, 2010, Gehl was scheduled to have visitation with H.G. However, the daycare center where H.G. was supposed to have been informed Gehl that his son had not been on the bus from school to the daycare center. Gehl then called Carol, Stevie Joe's mother and H.G.'s legal guardian, and she told Gehl that H.G. would be at her house later that afternoon. However, when Gehl and his brother Jeremy Gehl ("Jeremy") went to Carol's house, he was told that H.G. was not there and that Carol would take the child to Gehl's house later. Carol, however, later left a message on Gehl's voicemail informing him that H.G. did not want to visit with his father and that she was not going to force the issue with the child.

2

In violation of both protective orders, Gehl and Jeremy then drove to the Bledsoes' residence, where they suspected H.G to be.[1] Gehl and his brother approached the front door, and Gehl knocked. Billy answered the door holding a shotgun. As Billy raised the shotgun, Gehl jumped off the porch to avoid being shot. Jeremy was armed with a handgun and shot Billy, who later died as a result.[2] Gehl admitted to officers who investigated the shooting that he was on probation and had violated the protective orders by going to the Bledsoes' house.

On December 16, 2010, the State charged Gehl with two counts of Class D felony invasion of privacy as a result of his having violated the protective orders. The Orange Circuit Court granted Gehl's motion for a change of venue, and the case was transferred to the Crawford Circuit Court. Gehl pleaded guilty as charged on September 19, 2011. On November 21, 2011, the trial court held a sentencing hearing. At the conclusion of the hearing, the trial court found as aggravating circumstances that Gehl had a history of criminal behavior, that he had committed the instant offenses while on probation and in violation of the terms of his probation to have no contact with Billy, and that Gehl was out on bond in another case when he committed the instant offenses. The trial court found as mitigating that incarceration would be a hardship on Gehl's dependents. The trial court concluded that the aggravators outweighed this mitigator; in fact, the trial court concluded that Gehl's criminal history alone outweighed this one mitigator. The court

---

[1] Gehl later admitted that he had gone to this house numerous times before in order to pick up his son, even though he knew that this was in violation of the protective orders, because Stevie Joe did not want to bring the boy to Carol's house for Gehl to pick up.

[2] According to Gehl, his brother was not charged as a result of this shooting because it was determined to be in self-defense. Tr. p. 27.

also noted that Gehl's statement at sentencing showed little remorse and instead attempted to justify his actions. The trial court sentenced Gehl to two years on each count, to be served consecutively, for an aggregate term of four years incarceration. Gehl now appeals.

## I. Abuse of Sentencing Discretion

Gehl first claims that the trial court abused its discretion in sentencing him to an aggregate term of four years. Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). A trial court may abuse its sentencing discretion by: (1) failing to enter a sentencing statement, (2) finding aggravating or mitigating factors unsupported by the record, (3) omitting mitigating factors clearly supported by the record and advanced for consideration, or (4) giving reasons that are improper as a matter of law. Id. at 490-91. Because a trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, it cannot now be said to have abused its discretion in failing to properly weigh such factors. Id. at 491. Even if a trial court has abused its discretion in sentencing, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record. Id. at 491.

In the present case, Gehl claims that the trial court abused its discretion by failing to consider his guilty plea as a mitigating circumstance. A defendant's decision to plead

4

guilty is a mitigating factor, but not necessarily a significant mitigating factor. Cotto v. State, 829 N.E.2d 520, 525 (Ind. 2005). A guilty plea does not rise to the level of a significant mitigating factor if the defendant has received a substantial benefit from the plea, or where the evidence is such that the decision is a pragmatic one, the guilty plea does not rise to the level of significant mitigation. Anglemyer v. State, 875 N.E.2d 218, 221 (Ind. 2007).

Here, although it does not appear that Gehl received any substantial benefit by pleading guilty, he had admitted to the police that he was at the Bledsoes' house, in violation of the protective orders. Thus, the trial court was within its discretion to conclude that Gehl's decision to plead guilty was simply a pragmatic one. Under these facts and circumstances, we cannot say that the trial court abused its discretion in failing to consider Gehl's guilty plea as a significant mitigating factor.

Even if we were to conclude otherwise, reversal would not be required. Given the remaining aggravating factors found by the trial court, which included Gehl's criminal history, the fact that he was on probation at the time of the instant offenses, and that he was out on bond at the time of the instant offenses, we can say with confidence that the trial court would have imposed the same sentence even if it had considered Gehl's guilty plea as a significant mitigator. See Anglemyer, 868 N.E.2d at 491.

Finally, even if a trial court abuses its discretion in sentencing a defendant, we will not remand for resentencing if the sentence imposed is not inappropriate. Chappell v. State, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012), trans. denied; Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans. denied; Felder v. State, 870 N.E.2d 554,

5

558 (Ind. Ct. App. 2007); see also Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (noting that when trial court errs in sentencing defendant, court on appeal may exercise authority to review and revise sentence, instead of remanding for resentencing). We therefore consider Gehl's claim that his sentence is inappropriate.

## II. Appellate Rule 7(B)

Pursuant to Indiana Appellate Rule 7(B) (2009), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In our review of sentences under this rule, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011), trans. denied. And although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell, 895 N.E.2d at 1225. Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. And it is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). This is a burden that Gehl has failed to meet.

6

The nature of Gehl's offense supports the imposition of a sentence greater than the advisory. Gehl admittedly went to the Bledsoes' house numerous times, which he knew was in violation of the protective orders preventing him from contacting Stevie Joe and Billy. Even though he knew he had a tumultuous relationship with Stevie Joe and Billy, Gehl and his brother went over to the Bledsoes' home to look for H.G. If Gehl was having trouble securing his parenting time with his son, he should have sought recourse through the court system. Instead, he decided to directly confront Stevie Joe and Billy, a decision that ultimately led to Billy's death.

The character of the offender provides further support for the trial court's decision to impose an aggregate four-year sentence. As noted in the pre-sentence investigation report, Gehl had a criminal history that included six misdemeanor convictions and one felony conviction. Gehl was convicted in 1989 of Class B felony armed robbery and was sentenced to six years executed and four years suspended. Although his subsequent criminal history was not as serious, he nevertheless amassed six misdemeanor convictions, which included convictions for operating a vehicle while intoxicated twice, for battery, and for invasion of privacy, the same crime for which he was convicted in the instant case. Like the trial court, we also find it telling that Gehl was on probation for his battery conviction at the time of the incident, and a condition of this probation was that he have no contact with Billy. In flagrant violation of this, Gehl admitted that he regularly went to the Bledsoes' home to pick up his son. Furthermore, Gehl was released on bond in yet another case when he committed the instant crimes. None of this speaks well for Gehl's character. After giving due consideration to the trial court's sentencing

7

decision, we are unable to say that Gehl's four-year sentence is inappropriate in light of the nature of the offenses or the character of the offender.

Gehl also claims that he received the maximum sentence, and notes that the maximum possible sentences are generally most appropriate for the worst offenders. Simmons v. State, 962 N.E.2d 86, 92 (Ind. Ct. App. 2011). The State disputes that Gehl received the maximum sentence, correctly observing that Gehl received two years on each count, whereas the maximum sentence for a Class D felony is three years. See Ind. Code § 35-50-2-7. Gehl correctly notes, however, that he did receive the maximum sentence because the trial court was statutorily limited to impose an aggregate sentence of no greater than four years, the advisory sentence for a Class C felony. See Ind. Code § 35-50-1-2(c) (limiting the total of the consecutive terms for non-violent felony convictions arising out of the same episode of criminal conduct to the advisory sentence for felony which is one class higher than the most serious felony for which defendant was convicted). Thus, even though the trial court did not impose the statutory maximum three-year sentence on each count, the trial court did impose the maximum allowable aggregate sentence.

Although the maximum possible sentences are generally most appropriate for the worst offenders, this rule is not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender. Simmons, 962 N.E.2d at 92. By stating that maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and

8

offenders that warrant the maximum punishment, and this encompasses a considerable variety of offenses and offenders.  Id. at 92-93.  Even under this "worst offenders/worst offenses" analysis, we are of the opinion that Gehl's four-year aggregate sentence is appropriate.

## Conclusion

The trial court did not abuse its discretion by failing to consider Gehl's guilty plea as a significant mitigating factor, and the aggregate four-year sentence imposed by the trial court is not inappropriate.

Affirmed.

VAIDIK, J., and BARNES, J., concur.