## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 05 2017, 6:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Victor M. Rivera,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 5, 2017

Court of Appeals Case No.
02A04-1611-CR-2625

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1602-F3-10

**Crone, Judge.**

## Case Summary

[1] Victor M. Rivera appeals his conviction and sentence for level 6 felony neglect of a dependent. Rivera claims that the evidence is insufficient to support his conviction. He also asserts that the trial court abused its discretion in sentencing him by failing to recognize mitigating factors and that his two-and-one-half-year sentence is inappropriate in light of the nature of the offense and his character. We conclude that the evidence is sufficient, the trial court did not abuse its discretion in sentencing him, and Rivera has failed to carry his burden to show that his sentence is inappropriate. Therefore, we affirm.

## Facts and Procedural History

[2] The evidence most favorable to the conviction shows that in 2015, Rivera lived with his pregnant girlfriend, Jennifer Born, in her apartment. They also lived with Born's two elementary-school-aged children, Al.B. ("Daughter") and G.B. In July 2015, Jennifer gave birth to Ax.B. ("Baby").

[3] The apartment harbored bedbugs and lice that infected the children. Tr. Vol. 3 at 11, 31, 63-64. Daughter and G.B. had issues with hygiene, like bathing. *Id.* at 11. G.B. was often "filthy," developed "skin issues," and did not brush his teeth regularly. *Id.* at 11, 63. Daughter and G.B. had poor school attendance. *Id.* at 11, 63. Rivera often called Daughter and G.B. names. *Id.* at 12. He physically disciplined them. G.B. complained that Rivera hit him and hurt him. *Id.* at 62. Rivera threw G.B. across the room onto the couch and held his face into the cushions so that G.B. could not breathe. *Id.* at 62-63. Rivera

verbally abused Born in front of the children. *Id.* at 18. During one of their arguments, Daughter witnessed Rivera putting Born in a choke hold. *Id.* at 13; Tr. Vol. 2 at 220. The Indiana Department of Child Services was called more than once while Born was with Rivera.

[4] On the morning of October 18, 2015, Baby appeared normal when he woke up. Born fed him and made pancakes for Daughter, G.B., and their two cousins who had spent the night. Rivera woke up around noon and was angry. He picked up Baby and shook him. He also held Baby upside down by his arms and legs. Baby vomited on Rivera, and he shook Baby harder. Rivera changed his clothes, and he and Born began getting the children ready to go to the park. During this time, Rivera was angry and cussing at Born. Rivera was holding Baby when he went to Daughter's bedroom to get the baby stroller. A baby swing was on top of the stroller. Rivera picked up the baby swing and threw it out of the room, and it hit Daughter in the nose.

[5] Rivera pointed out to Born and the children that Baby had a bump on his head. Rivera called 911 and reported that Baby was injured and needed medical attention. The police and paramedics responded, and Baby was taken to the hospital. He suffered multiple injuries that appeared to have been inflicted on different dates. He had an acute spiral fracture to his femur, a partially healed fracture to his left humerus, a skull fracture from a blow to the head, head trauma from being shaken, and retinal hemorrhages. Baby's injuries were the result of "non-accidental trauma or inflicted trauma on the child." Tr. Vol. 2 at 99-100.

[6] Police investigators found that the apartment "smelled dirty," that "you could smell [] trash, old food, [] bathroom trash." *Id*. at 168. In addition, "there [were] a lot of trash bags in the apartment[,] almost in every single room [were] items that were bagged up or were trash and there was a lot of clutter," and "[t]here were things piled on top of other things on top of other things in almost every single room." *Id*.

[7] The State filed two counts against Rivera. Count 1 charged that between July 24 and October 18, 2015, Rivera committed level 3 felony neglect of a dependent resulting in serious bodily injury; the charging information named "A.B." as the victim. Appellant's App. Vol. 2. at 15. Count 2 charged that between July 24 and October 18, 2015, Rivera committed level 6 felony neglect of a dependent; the charging information named "A.B. or G.B." as victims. *Id*. at 16. The dates of birth for the victims were redacted on both counts.

[8] A jury found Rivera not guilty of Count 1 and guilty of Count 2. At sentencing, the trial court found no mitigating circumstances and that Rivera's criminal history, consisting of eight juvenile adjudications and two adult misdemeanor convictions, and associated failed efforts at rehabilitation was an aggravating factor. The trial court sentenced Rivera to an executed sentence of two and one-half years. This appeal ensued.

# Discussion and Decision

## Section 1 - Sufficient evidence supports Rivera's conviction.

[9] Rivera first challenges the sufficiency of the evidence supporting his conviction. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id.*

[10] To convict Rivera of level 6 felony neglect of a dependent, the State was required to prove beyond a reasonable doubt that he, while having the care of "A.B. or G.B.," whether assumed voluntarily or because of a legal obligation, knowingly or intentionally placed "A.B. or G.B." in a situation that endangered the dependent's life or health. Ind. Code § 35-46-1-4(a); Appellant's App. Vol. 2 at 16. We observe that A.B. could refer to either Baby or Daughter because they have the same first and last initials. Count 1 also named "A.B." as the victim. Appellant's App. Vol. 2 at 15. The birthdates have been redacted. There is no question that the "A.B." in Count 1 referred to Baby, but the jury acquitted Rivera of that count. While we recognize the importance of protecting the identity of certain individuals in public documents, the State's use of only the first and last initial of the victim in the charging information caused significant confusion in this appeal. Rivera's sufficiency argument

assumes that the "A.B." named in Count 2 is Baby, whereas the State contends that the "A.B." named in Count 2 is Daughter.

[11] In an attempt to positively identify Count 2's "A.B.," we have searched the entire record, including the probable cause affidavit, protection orders, State's notice of intent to use statements of protected persons, jury instructions, and opening and closing arguments. We found little help. Although the prosecutor's closing argument refers to Daughter, the prosecutor did not link Count 2 to her in such a way that we can conclude with complete confidence that she is Count 2's "A.B."[1] The presentence investigation report contains restitution response forms naming the victims as the Baby and G.B. Appellant's App. Vol. 3 at 15-16. Although the identity of Count 2's A.B. is uncertain, the charging information also names G.B. as a victim and his

---

[1] To support its assertion that Count 2 was directed to Daughter and not Baby, the State cites the following portions of the prosecutor's closing argument:

> Why do bad things keep happening to [Baby]? Now, we know that [Daughter] and [G.B.] are older and they're stronger and they're quicker and they can maybe get out of the house with just a bruised cheek or a broken nose with [Daughter's] case or [G.B.'s] case a spanked bottom or an abscess on his behind; but a three-month old isn't so lucky. For that reason, he doesn't get to escape the violence in that household. We know [Rivera] is aware of the problems, we know DCS was called [on] multiple occasions. ….

> But we know what took place, we know that routinely there was violence in that house and that the children were all exposed to it. …. We know that [Daughter] was struck in the face hard enough to be noticed weeks later. She talked about her bruise that she had from getting hit in the face by this heavy item. This house had it all. It had vulgar language directed towards the kids, cussing at children under the age of ten, calling them little bitches and they're [sic] little fucking asses needed beat. Arguing in front of the children about the fact that they should be beaten. …. We have lice, … bedbugs. Hygiene. Does [Rivera] get opted out of all these things? …. The whole environment was neglectful, that's what was going on. ….

> He neglected those kids the whole time he stayed with them in that house. You don't get a free pass. If you're gonna live and act like you're a parent, you're gonna be a parent to the kids, you're gonna live in their house, you're gonna be in that environment, then damn it, stand up and do it. And he didn't. Instead, he shook that [B]aby.

Tr. Vol. 3 at 92-93, 95, 112, 114.

identity is not in question. Therefore, we will address the sufficiency of the evidence regarding G.B.[2]

[12] The evidence shows that Rivera was Born's boyfriend, lived with G.B., acted as a father figure to him, and had the care of G.B. as a dependent. During that time, G.B. was not kept clean and developed skin problems, his home was dirty and infested with lice and bedbugs, he had poor school attendance, and Rivera was aware of these problems. The evidence also shows that Rivera verbally and physically abused G.B. and that G.B. was aware that Rivera verbally abused Born. G.B.'s physical and mental health were certainly at risk in this environment. We conclude that the evidence was sufficient to show that Rivera knowingly or intentionally placed G.B. in a situation that endangered his life or health. Accordingly, we affirm Rivera's conviction.

## Section 2 - The trial court did not abuse its discretion in sentencing Rivera.

[13] Rivera asserts that the trial court abused its discretion when it sentenced him. Sentencing decisions are within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs when the trial court's decision is contrary to "the logic and effect of the facts and circumstances before the court or the

---

[2] Rivera does not argue that the charging information was improper for naming two victims in the alternative. *Cf., e.g.*, *Lainhart v. State*, 916 N.E.2d 924, 942 (Ind. Ct. App. 2009) (concluding that by charging alternate victims in a single count, the State improperly joined several alternative crimes, and therefore trial court erred in failing to instruct jury that they must reach unanimous decision as to which crime, if any, defendant committed).

reasonable, probable, and actual deductions to be drawn therefrom." *Williams v. State*, 997 N.E.2d 1154, 1163 (Ind. Ct. App. 2013). A trial court abuses its discretion by entering a sentencing statement that omits mitigating factors that are clearly supported by the record and advanced for consideration. *Anglemyer*, 868 N.E.2d at 490-91. Although an appellate court may review the trial court's reasons and omissions of reasons for imposing sentence, the relative weight assigned by the trial court to aggravating and mitigating factors is not subject to appellate review. *Id*. at 491.

[14] Specifically, Rivera contends that the trial court abused its discretion by failing to find as mitigating factors that (1) he was only twenty years old at the time of the offense and (2) this was his first felony conviction as an adult. The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor and is not required to give the same weight to proffered mitigating factors as the defendant does. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012). A trial court does not abuse its discretion by failing to identify a mitigating factor unless the mitigating evidence is both significant and clearly supported by the record. *Id*.

[15] Although Rivera was only twenty at the time of the offense and had no prior felony convictions, he had had numerous contacts with the criminal justice system. Rivera has eight prior juvenile adjudications. Four of his adjudications would have been felonies if committed by an adult, namely, two counts of class D felony battery, class D felony receiving stolen property, and class D felony escape. His adult criminal history includes misdemeanors for battery resulting

in bodily injury and operating while intoxicated. In light of Rivera's criminal history, we cannot say that the trial court abused its discretion in declining to find that his age and absence of adult felony convictions are significant mitigating factors.

## Section 3 - Rivera has failed to carry his burden to show that his sentence is inappropriate.

Finally, Rivera asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "In assessing the nature of the offense and character of the offender, we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or

persistent examples of good character).” *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Rivera has the burden to show that his sentence is inappropriate. *Anglemyer*, 868 N.E.2d at 494.

[17] Turning first to the nature of the offense, we observe that “the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed.” *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). The sentencing range for a level 6 felony is six months to two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). Rivera received the maximum sentence. “Although the maximum possible sentences are generally most appropriate for the worst offenders, this rule is not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario.” *Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013). “By stating that maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But this encompasses a considerable variety of offenses and offenders.” *Simmons v. State*, 962 N.E.2d 86, 92-93 (Ind. Ct. App. 2011) (citation omitted). Here, as previously discussed, G.B.’s physical, mental, and emotional needs were completely neglected. He, his siblings, and his mother were all verbally abused by Rivera. Rivera has failed to show compelling evidence portraying the nature of the offense in a positive light.

[18] As for Rivera’s character, he claims that he has been polite, respectful, and cooperative with officials during the investigation and judicial proceedings,

which shows that he is "not the most culpable offender." Appellant's Br. at 25. However, rather than a history revealing substantial virtuous traits or persistent examples of good character, the relatively young Rivera has a long history of breaking the law (including crimes of violence), and previous attempts at rehabilitation were apparently unsuccessful. We conclude that Rivera has failed to carry his burden to show that his sentence is inappropriate based on the nature of the offense and his character. Accordingly, we affirm his sentence.

[19] Affirmed.

Baker, J., and Barnes, J., concur.