

FILED

Aug 19 2019, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Adam C. Squiller
John M. Haecker
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edward Blackburn, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 19, 2019 <br><br> Court of Appeals Case No. 18A-CR-2915 <br><br> Appeal from the Starke Circuit Court <br><br> The Honorable Kim Hall, Judge <br><br> Trial Court Cause No. 75C01-1703-MR-2 |

**Altice, Judge.**

**Case Summary**

Edward Blackburn appeals his murder conviction. He raises two issues on appeal:

I.    Whether the trial court erred in denying his motion to continue the jury trial based on the absence of a witness; and

II.   Whether the trial court abused its discretion in refusing to instruct the jury on the alleged lesser included offense of involuntary manslaughter.

We affirm.

**Facts and Procedural History**

On March 3, 2017, Blackburn was driving his girlfriend of around two months, Augusta Hadden, home. Raymond Higdon and his fiancée Terri Fields were driving in the opposite direction to drop off their friend Cord Colgrove after spending the entire day together. Higdon was driving, with Colgrove in the passenger seat and Fields between them. As the vehicles passed each other, Colgrove spotted Hadden in the red truck Blackburn was driving. He told Higdon, "Hey, there's Gus. Turn around." *Transcript Vol. 3* at 147. "Gus" referred to Hadden, Colgrove's ex-girlfriend.

Hadden and Colgrove had dated on and off for five years, but Hadden had recently broken up with him. Since then, Colgrove had called and texted Hadden numerous times, threatening her new boyfriend and begging her to take

him back.[1]  Hadden responded infrequently, only to tell Colgrove to leave her alone.  She tried unsuccessfully to block Colgrove's number, and around February 9, she got a new phone instead.

[5]  Neither Higdon nor Fields recognized the red truck.  Nor could they identify its occupants at the time.  Nevertheless, Higdon stopped in the middle of the road, turned his truck around, and followed Blackburn's truck, speeding up to keep up with it.  Both cars went through a stop sign.  A few minutes later, the red truck turned down a residential lane before stopping in a grassy area.  Higdon pulled up on the red truck's driver's side.

[6]  In the passenger's seat, Colgrove handed his cell phone and wallet to Higdon saying, "Just in case anything happens." *Transcript Vol. 4* at 10.  Higdon said, "Man, don't be a retard." *Id.*  Colgrove assured him that he was "just going to put this bitch on front street." *Id.*

[7]  Fields and Higdon noted that the driver's window of the red truck was partially rolled down.  They could see two individuals, later identified as Blackburn and Hadden, inside.  Colgrove opened his door and stepped outside the truck.  He took a step or two forward, raised his hands, and said, without yelling, "What the fuck, Gus?" *Transcript Vol. 3* at 162.  In that amount of time, Blackburn, who was in the driver's seat, rolled his window down the rest of the way and

---

[1] On February 8, phone records indicate that Colgrove texted Hadden twenty-six times, telling her he loved and needed her more than anything and offering her hundreds of dollars to spend at the Casino if she would talk to him.

fired his gun. The bullet hit Colgrove in the mouth, fracturing several teeth and his second cervical vertebra and perforating his carotid artery. He died at the scene.

[8] Colgrove and Blackburn had never met face to face. However, Blackburn believed Colgrove had vandalized his car one night while he was with Hadden. Blackburn also told one of Hadden's friends, sometime in February, that Colgrove had snitched on him to the police and that when he saw Colgrove, he "had something for his ass." *Transcript Vol. 4* at 52. Blackburn simultaneously leaned back in his chair, pulled up his shirt to reveal the butt of a pistol, and smacked it.

[9] Fields and Higdon called the police and an ambulance for Colgrove while Blackburn and Hadden backed away, hit some trees, and fled. They met up with some of Blackburn's friends who helped him burn his truck. Blackburn and Hadden hid out in a hotel until police found them the next day.

[10] Blackburn was charged with murder on March 6, 2017. In October 2017, Blackburn filed a motion to compel grant of immunity and/or for alternative relief citing the need to have Hadden testify without fear of being charged as an accomplice.[2] The trial court denied the motion, citing lack of authority to compel the State to give Hadden immunity. In March 2018, Blackburn filed a

---

[2] Hadden was initially charged as an after-the-fact accomplice under the theory that she was the one to throw her phone out the window in an attempt to avoid being tracked by the police. This charge was later dismissed without prejudice due to a lack of evidence.

motion to continue the trial to August due to the recent acquisition of an expert witness that needed time to prepare. The court granted this motion. Then, one week before trial was to begin, Blackburn filed a motion to continue based on the absence of a witness, Hadden. Blackburn supplemented this motion twice and renewed it on the morning of the first day of his trial. The trial court denied the motion to continue. The case was tried by jury from August 13, 2018 to August 21, 2018. After the close of evidence, Blackburn submitted proposed final jury instructions, including instructions on reckless homicide, involuntary manslaughter, and pointing a firearm at another person. The latter two instructions were denied.

[11] The jury found Blackburn guilty of murder. Thereafter, in November 2018, the trial court sentenced him to sixty-five years in prison. Blackburn now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Motion to Continue

[12] Blackburn argues that the trial court improperly denied his motion to continue based on the absence of witness Hadden. Upon motion, a trial may be continued at the court's discretion and shall be continued upon a showing of good cause established by affidavit. Ind. Trial Rule 53.5. When a defendant requests a continuance due to the absence of a material witness and the statutory criteria are met, the defendant is entitled to a continuance as a matter of right. *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind. 1995). Although absence

of a material witness is a statutory ground for a continuance, if the motion for continuance does not meet the statutory criteria, then the trial court may use its discretion to grant or deny the motion. *Id.* Decisions on motions made at the court's discretion are given substantial deference. *Id.* There is always a strong presumption that the trial court properly exercised its discretion. *Id.* We will not disturb the trial court's decision absent a clear demonstration of abuse of discretion resulting in prejudice. *Vaughn v. State*, 590 N.E.2d 134, 135-36 (Ind. 1992).

[13] Blackburn argues that he fulfilled the requirements outlined in Ind. Code § 35-36-7-1 governing motions to continue due to the absence of a material witness and thus was entitled a continuance as a matter of right. Like the trial court, we are not convinced. I.C. § 35-36-7-1(b)(2) requires the affiant indicate the probability of procuring the witness's testimony within a reasonable time, which Blackburn failed to do. As the trial court noted, Blackburn admits in his affidavit, "I do not have any other resources for locating Ms. Hadden at this time." *Appellant's Confidential Appendix Vol. 2 of 3* at 109. He can only guess that she may be in Mobile, Alabama, a general location he initially proposed during a pretrial hearing to discuss the defendant's motion to compel immunity for Hadden from the State on October 19, 2017. This hearing took place nearly ten months before the trial, and Blackburn was unable to make any progress in finding Hadden in the intervening months, and admitted in his affidavit to not having any prospects to change this situation. As such, he failed to argue that

Hadden would ever be located, let alone that her testimony would be procured within a reasonable time.

[14] Because Blackburn's motion to continue did not satisfy the statutory requirements, we will review the court's decision only for an abuse of discretion. "Whether the trial court properly exercised its authority includes a review of whether the competing interests of the parties were properly evaluated and compared, and if not, whether prejudice to the movant from maintaining the schedule of events occurred." *Vaughn*, 590 N.E.2d at 136.

[15] Blackburn was not prejudiced by the denial of the motion to continue. While Hadden did not testify, cell phone records of texts exchanged between her and Blackburn and between her and Colgrove were admitted to support Blackburn's claim that Colgrove was harassing Hadden and threatening him. Blackburn also took the stand to testify as to his side of events including the assertion that he was acting in self-defense when he shot Colgrove. While Blackburn claims Hadden's testimony would have supported his, there's no real way to know that it would have. In any event, since Blackburn testified, the jury was presented with his version of events in considering whether to convict him. Between Blackburn's testimony and the admission of the phone records, the claimed substance of Hadden's testimony reached the jury. *See Walker v. State*, 471 N.E.2d 1089, 1092 (Ind. 1984) (finding no abuse of discretion when the trial court denied defendant's motion to continue due to the absence of an alibi witness that had not been located in six months of searching where the only leads would take days to resolve and the defendant testified as to his

whereabouts on the day in question so that the jury was not denied the opportunity to consider defendant's explanation of the events); *Laster v. State*, 956 N.E.2d 187, 193 (Ind. Ct. App. 2011) (finding that the trial court did not abuse its discretion in denying defendant's motion to continue when weighing the unlikelihood of finding a witness whose location was unknown against the inconvenience and expense of rescheduling a trial).

[16] We affirm the trial court's denial of Blackburn's motion to continue.

## II. Jury Instruction

[17] Blackburn argues that the trial court abused its discretion in refusing to instruct the jury on Level 5 felony involuntary manslaughter. When determining whether to instruct a jury on a lesser included offense of the crime charged, the trial court must perform a three step analysis. First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the latter is inherently included in the former. *Wright v. State,* 658 N.E.2d 563, 566 (Ind. 1995). Second, if the offense is not inherently included, the trial court must then determine if the alleged lesser included offense is factually included in the crime charged by comparing the statute defining the alleged lesser included offense to the charging instrument in the case. *Id*. at 567. An alleged lesser included offense is factually included if the means used to commit the crime charged include all of the elements of the alleged lesser included offense. *Id.*

[18]     If the alleged lesser included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. *Id.* If, however, the trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id.* If a jury could so conclude, then the trial court will be found to have committed reversible error by not giving an instruction, when requested, on the lesser offense. *Id.*

[19]     It is well established, as Blackburn concedes, that involuntary manslaughter is not an inherently lesser included offense of murder. *Id.* at 569; *compare* Ind. Code § 35-42-1-1 *with* I.C. § 35-42-1-4. He therefore argues that involuntary manslaughter is a factually included offense. Generally, cases involving involuntary manslaughter as factually included lesser offenses find their basis in battery, which we do not have here. *E.g. Lynch v. State*, 571 N.E.2d 537, 539 (Ind. 1991) (holding that involuntary manslaughter was a factually lesser included offense of murder where the killing was obviously accomplished with a touching, i.e., defendant "battered" victim with a shooting). Blackburn, however, makes novel use of another part of the involuntary manslaughter statute, namely that "A person who kills another human being while committing or attempting to commit: (1) a Level 5 or Level 6 felony that

inherently poses a risk of serious bodily injury… commits involuntary manslaughter." I.C. § 35-42-1-4(b). Blackburn directs us to Ind. Code § 35-46-4-3(b), which provides that knowingly or intentionally pointing a firearm at another person is a Level 6 felony. We will assume without deciding that pointing a firearm at another person inherently poses a risk of serious bodily injury. With this assumption in mind, involuntary manslaughter is a factually included lesser offense because the means used to commit the murder as charged clearly included pointing a firearm at Colgrove prior to shooting him.[3] Thus, we must turn to whether there is a serious evidentiary dispute such that the jury could conclude that the lesser offense was committed but not the greater.

[20] Involuntary manslaughter contemplates an *incidental* killing of another. *See Lynch*, 571 N.E.2d at 538 (noting "Involuntary manslaughter … contemplates an incidental killing that occurs during a battery"). Thus, for an involuntary manslaughter instruction to be warranted here, the pointing of a firearm would be knowing or intentional, but the pulling of the trigger would be incidental. Here we have the opposite. By claiming he shot in warning, Blackburn denied knowingly or intentionally pointing a firearm at Colgrove but admitted to intentionally pulling the trigger. In other words, Blackburn claims he intentionally fired a gun and incidentally the firearm was aimed at Colgrove's

---

[3] Blackburn's charging information reads "Blackburn did knowingly or intentionally kill another human being, to-wit: Cord Colgrove, by shooting him in the head," *Appellant's Confidential Appendix Vol. 2* at 3.

head. If Blackburn's testimony is taken as true, it would warrant a reckless homicide instruction, which was given, but still would not warrant an instruction of involuntary manslaughter.

[21] There is no serious evidentiary dispute that Blackburn, by shooting Colgrove in the head at close range, only intended to point his firearm at him. There is no evidence to corroborate Blackburn's testimony that he intended the shot as a warning—he did not verbally warn Colgrove to stay away or even give Colgrove time to register that Blackburn had a gun before pulling the trigger. By most accounts, Colgrove stepped out of the car, raised his hands, said "What the fuck, Gus?" and was shot in the head. *Transcript Vol. 3* at 162. The instruction of involuntary manslaughter was not warranted.

[22] Further, Blackburn's statement to Hadden's friend that he "had something for [Colgrove's] ass" while patting his gun indicates a murderous intent. *Transcript Vol. 4* at 52. Blackburn's lack of verbal warning at the time of the incident for Colgrove to back off before Blackburn fired his gun belies Blackburn's testimony that the shot was only meant to warn Colgrove off, not kill him. The jury had the opportunity to convict Blackburn for reckless homicide or acquit him on the basis of self-defense but still chose to convict him of murder, a knowing or intentional killing.

[23] There being no evidentiary dispute, the trial court acted properly by refusing to instruct the jury on the offenses of involuntary manslaughter.

[24] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.