## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2020, 12:23 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Eugene Moore,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | April 8, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2089<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Jennifer Prinz Harrison, Judge<br><br>Trial Court Cause No.<br>49G20-1804-F2-11795 |

**Brown, Judge.**

[1] Brian Eugene Moore appeals his convictions for dealing in methamphetamine as a level 2 felony, unlawful possession of a syringe and maintaining a common nuisance as a level 6 felonies, possession of marijuana as a class B misdemeanor, and possession of paraphernalia as a class C misdemeanor. We affirm and remand.

## Facts and Procedural History

[2] On April 9, 2018, police arrived at a residence which was leased by Moore and his fiancée Monica Vance to execute an arrest warrant for Tylan Abrego who was wearing a GPS monitor and had been staying at the residence for about one week. Police executed the arrest warrant and placed Abrego in handcuffs. Vance was not at home at the time of the search. As they placed Abrego in handcuffs, officers heard shuffling on the other side of the living room wall, performed a protective sweep for officer safety, found Moore sitting on the bed in the front bedroom, and noticed a semi-automatic handgun on a nightstand next to him and a bag of marijuana on a dresser. They obtained a search warrant and then searched the residence.

[3] Officers found a baggie of marijuana; a baggie of crystal methamphetamine; a meth pipe, a hundred-gram balance weight, and wallet with Moore's identification in the nightstand; a meth pipe and a syringe on the bed; a revolver on the floor near the nightstand; a sawed-off shotgun on a clothing shelf; a baggie of crystal methamphetamine in a pink bag; a large shard of crystal methamphetamine in a jewelry container; a large tied-off bag containing crystal methamphetamine inside a black CD case on a bookshelf; a post-it pad with

dollar values next to names consistent with a ledger; a Winchester rifle; and a tray with a burnt spoon, used syringe, and marijuana under clothes on a dresser. Indianapolis Metropolitan Police Officer Clayton Portell spoke with Moore, went "over everything," and "told him exactly what [officers] had found." Transcript Volume II at 122. Moore initially denied that everything in the room belonged to him and said that he shared the room with Vance, officers indicated they would wait for her to return home, and at that point Moore said "everything in there is mine." *Id.* He told Officer Portell the guns and all the drugs in the room belonged to him and he was not a drug dealer but just a user.

[4]     The State charged Moore with: Count I, dealing in methamphetamine as a level 2 felony; Count II, possession of methamphetamine as a level 3 felony; Count III, unlawful possession of a syringe as a level 6 felony; Count IV, maintaining a common nuisance as a level 6 felony; Count V, possession of marijuana as a class B misdemeanor; and Count VI, possession of paraphernalia as a class C misdemeanor. Prior to trial, Moore filed a Notice of 404(b) Evidence stating he proposed to introduce at trial "the drug history of Tylan Abrego, which includes five arrests for drug charges in the past two years." Appellant's Appendix Volume II at 85. The State filed a motion in limine requesting that Moore be instructed not to refer in any way to Abrego's criminal history, prior arrests, or drug use or to any speculative and/or hearsay testimony by Vance about the methamphetamine recovered from the front bedroom including testimony that it was placed there by Abrego.

On the day of trial, July 15, 2019, the court heard argument and found that Abrego's history of alleged drug possession, use, and convictions did not fall under the identity exception or any exception under Ind. Evidence Rule 404(b), was more prejudicial than probative, was a confusion of the issues, and was not relevant to Moore's intent as to the items found in his room. Moore's counsel then moved for a continuance and stated he received a message from Vance on Saturday morning and she was in the hospital. He argued Vance was an important defense witness, he had taken a taped statement from her several months earlier, and she would testify that: Abrego asked if she could store her valuables in the bedroom Vance shared with Moore; she was aware of a rifle Abrego had placed in the bedroom and cash Abrego kept in a drawer in her dresser; Moore did not have a black CD case, CDs, or a CD player; Abrego was trying to enter treatment but in the meantime was using speed, methamphetamine, and pills on a regular basis; there were times she tried to wake Abrego and it was difficult to wake her; Abrego carried a notebook with a list of names and numbers next to each name in her purse; and Abrego would front drugs to people. Moore made an offer of proof and introduced Vance's statement during which Vance indicated she was not present when the officers searched the residence, Abrego had been staying at the house a few days and trying to become admitted to a treatment facility, Abrego had placed a long gun behind her nightstand and kept money in a sock or zip purse in her dresser drawer, she had the notion Abrego received the money selling drugs but was not sure, she saw her sell drugs in her living room two times, she was not aware of any drugs hidden in her room or house, she was not aware of Abrego storing

anything in her bedroom other than the gun and some money, she had no knowledge of a pink purse or a jewelry container, she was unaware there was a CD case on her bookshelf, she had two skinnier cases than the one found on the bookshelf which contained DVDs and were kept just inside the door, and she did not know if Moore owned a black CD case. The State objected to a continuance and argued Vance's statement revealed she had no knowledge of the recovered methamphetamine and "wasn't even there," any testimony about Abrego's drug use was inadmissible, and the remaining testimony was speculation. Transcript Volume II at 13. The court stated it had reviewed the transcript of Vance's statement, any statements regarding Abrego's drug use was not admissible, Vance indicated she was unaware of the CD case, her testimony was speculative at best, and the majority of her testimony was inadmissible. The court denied Moore's motion for a continuance and granted the State's motion in limine.

[6] During his jury trial, Moore testified that, on the day of the search, Vance was not home and was helping her sister move and that, besides himself and Abrego, there were three other people in the house including a friend who had been staying on the couch, a man he did not know who was in the other bedroom with Abrego, and a woman who was one of Abrego's friends. He testified that the rifle belonged to Abrego and the other guns belonged to him. He testified the meth pipes were his, Vance did not know about them, "I had snuck around and I had done the stuff a few times with Ms. Abrego and didn't tell my old lady," "[y]ou know, she'd seen me do it twice," and "that's the big

crime out of all of this.  I did that behind her back."  *Id*. at 180.  He testified he had no idea where the black CD case came from, there was not a CD player in the house, and he had DVDs but no CDs.  He testified that, when he told officers everything in the bedroom belonged to him, he was referring to the marijuana and the little sack of meth and that he did not know there was methamphetamine in the CD case.  When asked if he had been letting Abrego stay at his house, Moore replied affirmatively and indicated they had said she could stay for a week.

[7]     The jury found Moore guilty on all counts.  The court stated: "I do accept the jury's verdict as to Count 1 through Count 6, and I do enter judgment of conviction for all three."  *Id*. at 216.  The court verbally sentenced Moore to concurrent terms of seventeen and one-half years with eleven and one-half years suspended on Count I, 730 days each on Counts III and IV, 180 days on Count V, and sixty days on Count VI.[1]  It ordered the executed sentence be served at Marion County Community Corrections.  The court also stated: "I show that Count 2 would merge into Count 1, so there will be no sentence imposed as to

---

[1] With respect to Count I, the court verbally stated it sentenced Moore to seventeen and one-half years with six years executed on a direct placement to Marion County Community Corrections Home Detention and eleven and one-half years suspended.  The chronological case summary ("CCS") reflects Moore received a sentence on Count I of 6205 days, or seventeen years, with 4197 days, or eleven and one-half years, suspended.  The court's abstract of judgment indicates Moore received a sentence on Count I of 6388 days, or seventeen and one-half years, with 2190 days, or six years, suspended.  The appellant's appendix contains two sentencing orders: one of the orders is stamped as filed and states Moore received a sentence on Count I of 6388 days, or seventeen and one-half years, with 2190 days, or six years, suspended; the other order states Moore received a sentence on Count I of 6205 days, or seventeen years, with 4197 days, or eleven and one-half years, suspended.  Also, while the court verbally sentenced Moore to sixty days on Count VI, the abstract of judgment, both sentencing orders, and CCS show a sentence of 180 days.  On remand, we instruct the trial court to issue amended entries reflecting Moore's actual sentences.

that." *Id*. at 227. The abstract of judgment, with respect to Count II, states "Conviction Merged." Appellant's Appendix Volume II at 24.

## *Discussion*

### I.

[8] Moore first asserts19 that the trial court should have allowed him to present evidence of Abrego's drug history and prior arrests on drug charges to support his position that the methamphetamine belonged to her. The State responds that Abrego's criminal history was not relevant and was inadmissible under Ind. Evidence Rules 404(b) and 403 and that any error in excluding the evidence is harmless in light of the overwhelming evidence of guilt presented.

[9] The trial court has broad discretion to rule on the admissibility of evidence. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). A trial court's ruling on the admission of evidence is generally accorded a great deal of deference on appeal. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015), *reh'g denied*. We do not reweigh the evidence; rather, we consider only evidence that is either favorable to the ruling or unrefuted and favorable to the defendant. *Beasley v. State*, 46 N.E.3d 1232, 1235 (Ind. 2016). Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party, and in determining the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable effect on the fact finder. *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011).

Ind. Evidence Rule 401 provides evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Ind. Evidence Rule 403 provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

Ind. Evidence Rule 404(b)(1) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Ind. Evidence Rule 404(b)(2) provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The prohibition in Evidence Rule 404(b) "applies to persons other than the defendant." *Britt v. State*, 937 N.E.2d 914, 917 (Ind. Ct. App. 2010) (citing *Wells v. State*, 904 N.E.2d 265, 270 (Ind. Ct. App. 2009) (citing *Garland v. State,* 788 N.E.2d 425, 429-430 (Ind. 2003)), *trans. denied*).

The trial court was able to consider the evidence Moore wished to present regarding Abrego's prior drug use and arrests. The evidence Moore desired to present was inadmissible under Evidence Rule 404(b) to prove Abrego's character and that she acted in accordance with the character. Further, he does not show the evidence was admissible for another purpose under Evidence Rule 404(b)(2). We cannot say the trial court abused its discretion in not admitting evidence of Abrego's drug history and prior arrests.

[13] Moore next claims the trial court should have granted his motion for a continuance. A trial may be continued at the trial court's discretion and shall be continued upon a showing of good cause established by affidavit. *Blackburn v. State*, 130 N.E.3d 1207, 1210 (Ind. Ct. App. 2019) (citing Ind. Trial Rule 53.5).[2] Ind. Code § 35-36-7-1[3] provides for a continuance upon a proper showing of an absence of evidence or the illness or absence of the defendant or a witness. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind. 2000). Although absence of a material witness is a statutory ground for a continuance, if the motion for continuance does not meet the statutory criteria, then the court may use its discretion to grant or deny the motion. *Blackburn*, 130 N.E.3d at 1210. Decisions on motions made at the court's discretion are given substantial deference. *Id.* There is always a strong presumption the trial court properly exercised its discretion. *Id.* We will not disturb the trial court's decision absent a clear demonstration of abuse of discretion resulting in prejudice. *Id.*

---

[2] Ind. Trial Rule 53.5 states in part: "Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence."

[3] Ind. Code § 35-36-7-1 provides:

> (a) A motion by a defendant to postpone a trial because of the absence of evidence may be made only on affidavit showing:
> > (1) that the evidence is material;
> > (2) that due diligence has been used to obtain the evidence; and
> > (3) the location of the evidence.
> * * * * *
> (d) A defendant must file an affidavit for a continuance not later than five (5) days before the date set for trial. If a defendant fails to file an affidavit by this time, then he must establish, to the satisfaction of the court, that he is not at fault for failing to file the affidavit at an earlier date.

[14]  Moore argues that, although he did not file an affidavit, it was not possible to produce an affidavit no later than five days before trial.  He argues Vance would have testified that Abrego carried a notebook showing how much she was owed, would front drugs to people, used and sold drugs, and stored valuables in the bedroom and that he did not have a CD player or own CDs.  Moore testified that Vance was not present at the time of the search, she did not know about the meth pipes, and he had "snuck around and . . . done the stuff a few times with Ms. Abrego and didn't tell" Vance.  Transcript Volume II at 180.  The trial court reviewed the transcript of Vance's statement in which she indicated she had the notion Abrego received the money selling drugs and saw her sell drugs two times, was not aware of any drugs hidden in her room, was unaware there was a CD case on her bookshelf, and did not know if Moore owned a black CD case.  Vance's statements related to Abrego's drug use were inadmissible under Evidence Rule 404(b).  The other statements by Vance were speculative and largely cumulative of other evidence including Moore's testimony.  Based upon on the record, we cannot say the trial court erred or abused its discretion in denying Moore's request for a continuance or that he was prejudiced by the court's decision.

III.

[15]  Moore next claims the trial court erred in entering judgment of conviction under Count II.  The State responds that vacation of the conviction would be

appropriate. In light of the State's agreement, we remand with instructions to vacate judgment of conviction under Count II.[4]

[16] For the foregoing reasons, we affirm Moore's convictions and remand to vacate the judgment of conviction under Count II and, as previously, noted, to issue amended entries reflecting Moore's actual sentences.

[17] Affirmed and remanded.

Najam, J., and Kirsch, J., concur.

---

[4] This will not impact Moore's sentence as the trial court did not impose any sentence on Count II.