## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 13 2020, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Russell A. Johnson
Johnson Gray & Johnson
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano-Colon
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Lee Scott, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 13, 2020 <br><br> Court of Appeals Case No. 20A-CR-536 <br><br> Appeal from the Bartholomew Superior Court <br><br> The Honorable James D. Worton, Judge <br><br> Trial Court Cause No. 03D01-1807-F4-4085 |

**Friedlander, Senior Judge.**

[1] Larry Lee Scott appeals from the trial court's order sentencing him to twelve years executed in the Indiana Department of Correction (DOC) after pleading guilty to one count of Level 4 felony child molesting,[1] contending that: (1) the trial court abused its discretion by denying Scott's motion to continue the sentencing hearing; (2) the trial court abused its discretion during sentencing by finding an aggravating circumstance not supported by the record; and (3) we should revise his sentence pursuant to our authority under Indiana Appellate Rule 7(B). We affirm in part, and reverse and remand in part.

[2] Scott is a former law enforcement officer, who was employed as a reserve deputy and the supervisor of security at Ceraland, a camping ground where he also camped. C.S., a young boy with autism, and his family had frequently visited Ceraland over the course of approximately three and a half years. During that time, Scott met the family and would speak to them at the gate as they entered the camping ground. Scott would also see C.S. on the camping grounds and regularly gave him snacks and drinks.

[3] On July 21, 2018, Scott invited twelve-year-old C.S. back to his camper. While in the camper, Scott engaged in sexual activity with C.S. More specifically, Scott exposed his penis to C.S. and masturbated in front of C.S. until "stuff come [sic] out of his thing." Appellant's App. Vol. II, p. 115. Scott had C.S. fondle Scott's penis, and he fondled C.S.'s penis, also taking a picture of C.S.

---

[1] Ind. Code § 35-42-4-3(b) (2015).

while C.S.'s penis was exposed. Scott showed C.S. pictures of "naked boys and girls," and "he wouldn't let [him] leave the camper." *Id*. Further, Scott attempted to bribe C.S. not to report the abuse by giving him money, candy, and gifts.

[4] C.S. immediately reported the abuse. Indiana State Police Investigator Jason Duncan investigated the report of child molestation and obtained a search warrant for Scott's camper and cellular phone. During the search, Duncan located the cellular phone and "observed a photograph of a young boy with his penis exposed on the phone." *Id*. at 30. He "noted that the boy was wearing the identical shirt that C.S. was wearing at the time this incident was reported." *Id*. He further noted that the date and time stamp on the photograph was consistent with the date and time that C.S. said the molestation occurred. Also during the search, Duncan found a "bong" containing ash in the closet of Scott's camper. *Id*.

[5] After advising him of his rights, Duncan interviewed Scott who acknowledged that he had known C.S. for approximately 3 years and regularly gave C.S. snacks when he came to Scott's camper. Scott stated that, on July 21, 2018, C.S. went into Scott's camper and the two "began playing 'grab ass.'" *Id*. Scott claimed that C.S. exposed his penis and asked him to touch it. Scott admitted that he "grabbed C.S.'s penis and rubbed it up and down for about a minute" and that he took a picture of C.S.'s exposed penis. *Id*. Additionally, Scott stated that he "told C.S. not [to] tell anyone what had happened because it is not the kind of thing people talk about." *Id*.

[6] On July 26, 2018, the State charged Scott with Count I, child molesting, a Level 4 felony; Count II, child molesting, a Level 4 felony; Count III, possession of child pornography, a Level 6 felony; Count IV, performing sexual conduct in the presence of a minor, a Level 6 felony; and Count V, possession of paraphernalia, a Class C misdemeanor.

[7] On July 29, 2019, the parties appeared for a change of plea hearing. At that time, Scott made an oral motion to continue the hearing, which was granted by the trial court. The trial court rescheduled the change of plea hearing for December 16, 2019. The court informed Scott that it would "not grant any motion for continuance filed after [December 16, 2019,] unless exceptional good cause is demonstrated." *Id*. at 98. Nevertheless, at the rescheduled plea agreement hearing, Scott's oral motion for a continuance was granted.

[8] At the beginning of the guilty plea/sentencing hearing which had been reset for February 18, 2020, Scott moved for yet another continuance of the sentencing portion of the proceedings. The trial court delayed ruling on the motion and proceeded with the guilty plea portion of the hearing. Immediately after accepting Scott's guilty plea and entering judgment of conviction, the trial court denied the continuance and proceeded with the sentencing portion of the hearing.

[9] Scott argued in favor of a sentence committing him to community corrections and incorporating long-term treatment. The State sought an aggravated

sentence to be served in the DOC but did not specify the length of the aggravated sentence it recommended.

[10] The trial court found as aggravating circumstances: 1) the harm, injury, loss or damage suffered by the victim of the offense was significant and greater than the elements necessary to prove the commission of the offense; 2) the victim of the offense suffers from autism; 3) the defendant was in a position of public trust due to being a reserve deputy sheriff and working as a security guard for the area in which the crime occurred; 4) Scott photographed C.S.'s genitals after molesting him; and 5) Scott minimized his conduct. The trial court found as mitigating circumstances Scott's lack of criminal history, his guilty plea, and his health problems.

[11] The trial court sentenced Scott to the maximum term of twelve years incarcerated, with the entire sentence to be served in the DOC. The trial court imposed a $2,000 fine, $250.10 in restitution, and also ordered Scott to register as a sex offender for life.

## 1.

[12] Scott first contends that the trial court abused its discretion by denying Scott's motion to continue the combined plea and sentencing hearing. He claims that: 1) just cause for the continuance existed inasmuch as a psychosexual evaluation was soon to be completed; 2) Scott and his counsel had not reviewed the pre-sentence investigation (PSI) report until the day of the hearing; and 3) he was

denied his due process right to explain or contest materials contained in the PSI report and to do so with the aid of the psychosexual evaluation report.

[13] "The decision whether to grant or deny a continuance is primarily a matter for the trial court." *Risner v. State*, 604 N.E.2d 13, 14 (Ind. Ct. App. 1992). A defendant is "entitled to a continuance as a matter of right" where the request is made "due to the absence of material evidence, absence of a material witness, or illness of the defendant, and the statutory criteria are met." *Anderson v. State*, 695 N.E.2d 156, 157 (Ind. Ct. App. 1998); *see also* Ind. Code § 35-36-7-1 (1981). When requesting a continuance, a "defendant must file an affidavit for a continuance not later than five (5) days before" the date of the hearing. Ind. Code § 35-36-7-1(d). If a defendant "fails to file an affidavit by this time, then he must establish . . .that he is not at fault for failing to file the affidavit at an earlier date." *Id*.

[14] "[W]hen a motion for a continuance . . . fails to meet the statutory criteria, the decision to grant or deny the motion is within the discretion of the trial court." *Arhelger v. State*, 714 N.E.2d 659, 667 (Ind. Ct. App. 1999). "A decision to deny a motion for continuance will be reviewed only for an abuse of discretion." *Risner*, 604 N.E.2d at 14. "An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court or where the record demonstrates prejudice from denial of the continuance." *Anderson*, 695 N.E.2d at 157.

"Decisions on motions made at the court's discretion are given substantial deference." *Blackburn v. State*, 130 N.E.3d 1207, 1210 (Ind. Ct. App. 2019). "There is always a strong presumption that the trial court properly exercised its discretion." *Id.* To demonstrate that the denial of a continuance "constitute[ed] reversible error, the defendant must demonstrate that []he was prejudiced by the denial." *Hamilton v. State*, 864 N.E.2d 1104, 1109 (Ind. Ct. App. 2007).

The United States Constitution provides in pertinent part that no person shall be "deprived of life, liberty, or property, without due process of law[.]" *Wilson v. State*, 865 N.E.2d 1024, 1029 (Ind. Ct. App. 2007); U.S. Const. amend. XIV. Or, stated differently, the Due Process Clause of the United States Constitution prohibits state action which deprives a person of life, liberty, or property without the process that is due: that is, a fair proceeding. *Gingerich v. State*, 979 N.E.2d 694 (Ind. Ct. App. 2012), *trans. denied*. Once a determination is made that the Due Process Clause applies, "the question remains what process is due." *Id.* at 710. Whether a party was denied due process is a question of law reviewed de novo. *Hilligoss v. State*, 45 N.E.3d 1228 (Ind. Ct. App. 2015); *R.R. v. State*, 106 N.E.3d 1037 (Ind. 2018).

"Although due process has never been precisely defined, the phrase expresses the requirement of 'fundamental fairness.'" *Hamilton*, 864 N.E.2d at 1110. This Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* Fundamental error has occurred "where the harm or potential for harm cannot

be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

[18] As we have detailed above, Scott was granted several continuances and had ample time to prepare for the sentencing portion of the hearing between the initial setting of a July 29, 2019 hearing date and the eventual February 18, 2020 hearing date. Indeed, Scott presented several witnesses to testify on his behalf at the hearing and presented testimony to controvert the contents of the PSI report.

[19] Teresa Higham, a friend of Scott's, refuted the characterization that Scott had provided about his physical health for the PSI report. She stated that instead of fair condition, Scott's health issues included a 100% blockage on the right valve of his heart, making his health far worse than fair. She also testified that she has left her own twelve-year-old son alone with Scott since becoming aware of the allegations and had no reservations about doing so. Michael Higham, Teresa's husband, also testified as to Scott's physical health and, as respects his mental health and cognitive abilities, testified that he was "concerned about what caused [the] abnormal behavior" and was "not certain that he does" understand the gravity of his actions. Tr. pp. 64-65. Bruce Dailey, a long-time friend of Scott's, testified consistently with the Highams' testimony, as did Ronald W. Shadley. Each of these witnesses testified that the behavior was out of character for Scott, was unexplainable, and could not have been done for the sexual gratification of either Scott or C.S. even though he admitted to such. During Scott's testimony, Scott's counsel also covered topics including Scott's

declining health, his memory issues with the possibility of some dementia, his history of service within the community, his recent counseling and the psychosexual evaluation, and differences between his various statements made to the police, for the PSI report and at the hearing.

[20]     *Gilbert v. State*, 982 N.E.2d 1087 (Ind. Ct. App. 2013), a case relied on by Scott, is distinguishable from the facts in this situation. *Gilbert* provides the following:

> Before sentencing a person for a felony, the court must conduct a hearing to consider the facts and circumstances relevant to sentencing. The person is entitled to subpoena and call witnesses and to present information in his own behalf.

982 N.E.2d at 1092 (quoting Ind. Code § 35-38-1-3 (1983)).

[21]     In *Gilbert*, the defendant was serving a sentence in Kentucky when he was charged with offenses in Indiana. He was briefly returned to Indiana to face the charges and resolved them by pleading guilty. The trial court ordered the preparation of a PSI report and a sentencing hearing was scheduled in Indiana. The record reflected that the defendant was returned to Kentucky and no Indiana sentencing hearing was held as scheduled. At some point, the governors of both states became involved and the defendant was returned to Indiana for forty-eight hours for the purpose of sentencing. The defendant's original Indiana attorney was on vacation, so the trial court contacted another local attorney to represent him at the hearing. At the hearing, the new attorney objected to the timing of the hearing, having received only one day's notice of the hearing. The trial court, while feeling constrained by the time frame set

forth in the executive order, denied the request for a continuance and proceeded with sentencing. A panel of this Court reversed the trial court on its sentencing decision and remanded for a new sentencing hearing after finding that the defendant's due process rights were violated inasmuch as the defendant did not have the opportunity to subpoena and call witnesses or to present information on his own behalf. *Id.* We did so while acknowledging the difficult position in which the trial court was placed given the terms of the executive order. *Id.* at 1092 n.6.

[22] The present case shows no such due process violation, bearing the only similarity that there was a brief period of time during which the PSI report could be reviewed by the defendant and counsel. Here, however, Scott had the same counsel throughout the matter and had been granted continuances, providing time for Scott and his same counsel to prepare. They did so and provided testimony on Scott's behalf refuting information contained in the PSI report and calling into doubt Scott's cognition and mental health. We find no abuse of discretion in the trial court's decision not to grant another continuance of the sentencing hearing after warning the parties that it would not do so again. In sum, Scott received the process that was due.

## 2.

[23] Next, Scott argues that "the trial court abused its discretion by entering a defective sentencing statement which included an aggravating circumstance not supported by the record." Appellant's Br. p. 30. Specifically, Scott contends that the trial court abused its discretion by finding as an aggravating

circumstance that the harm, injury, loss, or damage suffered by the victim of the offense was significant and greater than the elements necessary to prove the commission of the offense. He claims that "the harm suffered by C.S., although unfortunate and saddening, is of the type typically suffered by child molesting victims and accounted for in the advisory sentence." *Id.* at 31.

[24] Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. "A Court may impose any sentence that is authorized by statute and permissible under the Constitution of the State of Indiana, regardless of the presence or absence of aggravating or mitigating circumstances." *Id.* at 488. "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* at 490. If the trial court has abused its discretion, this Court will not remand for resentencing if it can "say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.*

[25] Scott pleaded guilty to child molesting, as a Level 4 felony, which carried a possible term of imprisonment of between two and twelve years, with the advisory sentence being six years. Ind. Code § 35-50-2-5.5 (2014). Scott was sentenced to a term of incarceration of twelve years in the DOC along with fines and restitution in addition to registration as a sex offender for life.

[26] At the sentencing hearing, the court identified numerous aggravating and mitigating factors. The court considered the following mitigating factors: Scott did not have a prior criminal history, he pleaded guilty to the offense, and he had physical health issues. The court identified the following aggravating factors: "the harm, injury, loss or damage suffered by the victim . . . was significant and greater than the elements necessary to prove the commission of the offense," the victim has autism, Scott was in a position of trust, and Scott took a photograph of the victim's genitals. Tr. Vol. II, p. 91.

[27] The trial court properly found that "the harm, injury, loss or damage suffered by the victim . . . was significant and greater than the elements necessary to prove the commission of the offense." *Id.* Though C.S. was not physically harmed, he suffered a great deal of emotional harm. The emotional harm suffered by C.S. was compounded by the fact that he is autistic. At sentencing, K.S., C.S.'s mother, informed the court that she and C.S.'s father have "had to explain things to him that he endured during the sexual abuse that he was not mentally mature enough to understand." *Id.* at 82. The family has had and will have "to pay for the counseling and therapy sessions we will all require in order to cope with what has happened." *Id.* The sexual abuse has "affected [C.S.'s] ability to focus, learn, and retain information." *Id.* at 83. Additionally, C.S.'s parents have had to re-educate him that most police officers want to help and protect people. For nearly the first two months after the incident, C.S. slept on the floor of his parents' bedroom. These facts demonstrate that the harm suffered by C.S. was significant and greater than the elements necessary to

prove the commission of the offense. Thus, the trial court did not abuse its discretion.

[28] Assuming, arguendo, that the trial court abused its discretion and improperly identified a factor to be aggravating, the error was harmless. We have the authority to "affirm the sentence if the error is harmless." *McElfresh v. State*, 51 N.E.3d 103, 112 (Ind. 2016). The trial court identified numerous aggravating factors. We have found that "[o]ne valid aggravator alone is enough to enhance a sentence or to impose it consecutive to another." *Gleason v. State*, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012). "Even when the trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld." *Garland v. State*, 855 N.E.2d 703, 707 (Ind. Ct. App. 2006), *trans. denied*. Any of the other correctly applied aggravating factors would support an enhanced sentence. We conclude that the trial court did not abuse its discretion by finding this aggravating factor and that assuming, arguendo, that the trial court did abuse its discretion with respect to this factor, other valid factors supported the enhanced sentence.

## 3.

[29] Scott contends that his sentence is inappropriate in light of the nature of his offense and his character. Scott claims that he had led a law-abiding life for seven decades and served his community for much of that time. He also notes that he has a deadly heart condition. He also points to his immediate admission of guilt and guilty plea, relieving C.S. from testifying at trial.

[30] Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Scott's offense and his character under Appellate Rule 7(B) with substantial deference to the sentence imposed by the trial court. *See Satterfield v. State*, 33 N.E.3d 344 (Ind. 2015). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[31] "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Scott bears the burden of persuading us that his sentence is inappropriate. *See id.*

[32] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Kunberger v. State*, 46 N.E.3d 966 (Ind. Ct. App. 2015); *Thompson v. State*, 5 N.E.3d 383 (Ind. Ct. App. 2014), *trans denied*. Here, Scott was convicted of Level 4 felony burglary. The penalty for committing a Level 4 felony is a term of imprisonment between two and twelve years, with the advisory sentence being six years. Ind. Code § 35-50-2-5.5. The trial court ordered that Scott serve a term of twelve years in the DOC and register as a sex offender for life. Thus, the trial court imposed the maximum sentence for that offense.

[33] "Although the maximum possible sentences are generally most appropriate for the worst offenders, this rule is not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender." *Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013) (citing *Simmons v. State*, 962 N.E.2d 86, 92 (Ind. Ct. App. 2011)). "By stating that maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment, and this encompasses a considerable variety of offenses and offenders." *Id.* at 92-93.

[34] We first turn to Scott's character to determine whether such supports a downward revision of his sentence. When considering a defendant's character for purposes of Appellate Rule 7(B) analysis, a defendant's criminal history is

one factor. *Garcia v. State*, 47 N.E.3d 1249 (Ind. Ct. App. 2015), *trans. denied*. The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Here, Scott has no criminal history. Indeed, he and his friends testified to the various jobs he held which had involved decades of service to the community. Each described Scott's behavior as respects his crime as being out of character. Further, there was evidence to suggest that Scott may have been experiencing some cognitive difficulties and may have suffered from mental as well as physical health problems.

[35] As for the nature of the offense, we must emphasize that Scott's offense was reprehensible. He used his position of trust to sexually abuse an autistic child. That said, when considered in conjunction with Scott's absence of a criminal record and history of public service, Scott's offense was not the worst of the worst such that a maximum sentence was warranted. We certainly believe that under the specific facts of this case that an enhanced sentence is proper, however, and remand this matter to the trial court to impose a sentence of eight years in the DOC.

[36] Judgment affirmed in part and reversed and remanded in part.

Kirsch, J., and May, J., concur.